## T. P. CHRISTY V. THE CITY OF KINGFISHER.

(Filed March 4, 1904.)

1. **REMOVAL OF CITY OFFICER.** Where the legislature enacts a general law on the subject of cities of the first class, and in one article provides that any city officer, except the mayor, may be removed for cause by the mayor and the city council, and in another article provides that the city marshal may be removed by the mayor and city council for certain causes, naming them, upon complaint, the provisions of the article relating to the marshal will control, and it will be presumed that the legislature did not intend to include such officer within the terms of the general statute for the removal of officers.

2. **SAME—Judicial Action, When—Construction of Statutes.** A law which authorizes the removal of a public officer for specified causes, such as intoxication, gambling, abuse of power, brutal or indecent conduct, the acceptance of bribes, etc., unless excluded by the language of the statutes, implies notice to the accused of the nature of the charges, and time of hearing, the right to introduce evidence in his own behalf after a case is made out by his accusers, and to be represented by counsel, who may cross-examine the witnesses against him; and he cannot lawfully, under such a statute, be removed without an opportunity to introduce his evidence and make his defense. And the burden is upon those prosecuting the charges to establish them; and a statute which authorizes a city council to hear and determine such charges and to enter an order of removal, but fails to provide for an appeal to, or review in the courts of the territory is absolutely void, because the hearing of evidence, weighing the same and rendering a decision based thereon, is judicial action, and, under section nine of the organic act of Oklahoma, the entire judicial power of this territory is vested in certain named courts, and a city council is not one of them.

3. **POWER OF LEGISLATURE.** The legislature of this territory has the power to authorize the mayor and city council of a city of the first class to remove summarily any elective or appointive city officer without notice or hearing, as it may legislate upon all rightful subjects of legislation, provided its acts do not contravene the provisions of the constitution of the United States or of some act of congress; but if it attempt to authorize such mayor and city council to remove such officer for specified cause, upon hearing and evidence, while that part which authorizes the removal for the causes named, will be upheld, the right of the mayor and city council to try him will be denied, because the procedure called for judicial action, and not the exercise of political power. The nature of the power is not determined from the mere removal of the officer, but from the procedure by which his removal is to be effected.

4. **MANDAMUS.** One who has been duly elected to the office of city marshal is entitled to the possession of the property and para-phernalia belonging to such office, and a writ of mandamus will not issue on the application of the mayor, for the city to compel such officer to surrender the possession of said property, where the only reason assigned for such writ is that the marshal has been removed from his office by the city council; as the courts will take judicial notice that under the law of this territory the city council have not the power to lawfully make such an order.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before C. F. Irwin, Trial Judge.*

*J. C. Robberts,* for plaintiff in error.

*M. J. Kane,* for defendant in error.

Opinion of the court by

BURWELL, J.: T. P. Christy was duly elected city marshal of the city of Kingfisher at the April election in 1899, for a term of two years. Complaint was filed against him for corruption in office, and he was suspended by the mayor. He asked for an opportunity to introduce evidence and be heard in his defense; and, although the matter was continued once for that purpose, he was denied that privilege, and the mayor and council passed a resolution purporting to remove him from office, and the mayor, in the name of the city, commenced this action in mandamus to compel Christy to turn over to the city all of its property in his possession, and commanding him to desist from further acting in the capacity of city marshal. To the alternative writ he filed his return, setting up fully all of the facts, and on this return the district court granted a peremptory writ and taxed the cost to the defendant. From this judgment Christy appeals.

Even if the city council had the power to remove the marshal from office (which we most positively deny), their

action, as presented by the record, shows an apparent determination to accomplish his removal without the slightest effort to afford him an opportunity to refute the charges preferred against him.   Such a proceeding ought not to be upheld, unless compelled by law, because the city marshal is an elective officer, and when the people have expressed a choice for the place, he should be permitted to serve out his term, unless, in violation of his trust, he wilfully breaks some territorial statute or city ordinance, or is derelict in the performance of his duty; nor do we believe, in the light of our organic act and the provisions of our statutes, that it can be sustained.   But let us here suggest that we do not deny the power of the legislature, by proper enactment, to grant to a city council the right to remove from office any city officer, whether he be elected or appointed, as the legislative power of the territory extends to all rightful subjects of legislation, not in conflict with the constitution of the United States or the laws of congress, and it cannot be gainsaid that the removal of public officers is a rightful subject of legislation; and while some of the earlier authorities held that the removal of an elective officer calls for judicial action (and perhaps this doctrine is still adhered to by some of the states) we think, in this territory, the removal of any officer, either elective or appointive, under the territorial laws, may call for judicial action, or for the exercise of executive or administrative power; and it is not the character of the power delegated by the legislature for the removal of officers which determines to which branch of the territorial government it belongs, but the manner in which the power shall be exercised.   For instance, the legislature might authorize any executive or administrative officer or legislative body

to remove arbitrarily certain officers, in his or its discretion, But if the law authorizes removal for specified causes alone, then the officer is entitled to be heard and to introduce evidence in his defense; and the officer or body trying the matter must weigh the evidence and pronounce judgment thereon; and the hearing of evidence, weighing the same, and arriving at a conclusion therefrom and announcing it is judicial action; and, under our organic act, the judicial power of the territory is vested in the supreme court, district courts, probate courts and justices of the peace, and the legislature has not the authority to confer judicial power upon any other court, person, body or tribunal. (*Territory of Oklahoma ex rel. Edgar Jones v. Hopkins,* 9 Okla. 133; *Perris v. Highley,* 20 Wal. 375, 22 L. Ed. 383; *Bardick et al. v. Dillon et al.,* 7 Okla. 535, 54 Pac. 785; *Spencer et al. v. Sully Co.,* 33 N. W. 97.) While several cases can be found which hold that the removal of an officer for cause is not a judicial act, the strongest case that can be found on that side of the question is *Donahue v. County of Will. et al.,* 100 Ill. 94; but a number of the authorities cited do not support the principle contended for therein, as, for instance, several cases hold that the removal of certain officers does not call for judicial action, which we concede, because, under the statute of the states from which these authorities are collated, the removing officer is given the unconditional power to remove, and others cited clearly support the view here contended for. One of these cases is *State ex rel. Willis v. Price,* 45 Wis. 610. The statute on which the decision was based provided for charges, notice of the time of hearing, the right to introduce evidence, and finally, for an appeal to the circuit court; and it was held by the supreme

court of Wisconsin in this very case, that the board in question was by the statute given the widest judicial discretion, and that its judgments could not be collaterally attacked. The general principles announced by the Illinois court, in the main, are correct; but it proceeds upon the theory that an office is not property; that no one owns an office. If these expressions used are intended to convey simply the idea that no one has such an interest in an office as will prevent the power creating it from abolishing it, or that an office is not the subject of inheritance, we grant it; but we cannot subscribe to the not uncommon theory that an officer, because a public servant, has no rights which are bound to be respected. A public office, while not property, is a position held of right by election or appointment, and all of the courts are quick to protect one in the enjoyment of those rights. They may differ, as on the question now under consideration, as to what his rights are, but whatever the court conceives them to be, it will protect as quickly and as fully as though it were property; and though this is done in one sense for the benefit of the state, the right of the officer is worthy of some consideration. In a country like this where the humblest citizen may aspire to the highest position, the courts, before sanctioning the summary removal of an officer who has been selected by the whole people of a city, and the filling of his place by six or eight councilmen, should be clearly justified by law. Therefore, it is the duty of courts to protect a citizen in the enjoyment of every right which he acquires under statutory or constitutional authority, as quickly and as fully as they would his property. And even though it be determined that one has no property right in an office, such conclusion in no

way affects the question as to whether the removal of an officer is judicial action. It is the manner in which the officer's removal is accomplished, and not the nature of his right which established the character of the act. For the causes and manner of removal we must consult the statutes. Section 357 of Wilson's Annotated Statutes provides as follows:

"The council may, by a vote of the majority of all the members to be entered upon the journal, remove for cause any officer except the mayor."

Section 363 provides:

"He (the mayor) shall, when he deems it necessary, require any officer of the city to exhibit his accounts, or other (official) papers, and to make a report to the city council in writing, touching any subject matter pertaining to his office, and if any officer upon such accounting, be found a defaulter, he shall be removed by the mayor and council."

Section 366 authorizes the mayor to suspend any city officer against whom charges of incompetency or dereliction of duty are preferred, until he and the city council can act thereon.

The sections referred to above are general and apply to all city officers; but the appellant was not removed under any of them. The council sought to remove him under section 439 of Wilson's Statutes, which relate to the city marshal and police officers. It provides:

"Upon complaint to the mayor, or president, or acting president of the council, that any marshal, assistant marshal or policeman has been intoxicated, or has been gambling, or has abused the power of his office, or been guilty of a brutal or indecent act, or taken or received any money, property, or

valuable things whatever, other than his legal salary, or fees, as a consideration for doing or omitting to do any particular act, or has refused to make an arrest in the proper case, or consented to, or connived at the escape of any person legally arrested, and in custody, the officer so receiving such complaint, shall lay the same before the council, at their first meeting thereafter. The council shall carefully and honestly enquire as to the truth of such complaint, and if they find the accused guilty, they shall forthwith, by order to be entered on their journal, remove him from office, and he shall not be again appointed to such office unless two-thirds of the councilmen elect consent thereto."

This above section relates to the manner in which the city marshal shall be removed and for what cause; and, relating to this particular office, is controlling over all of the general statutes. By its terms the marshal may be removed for intoxication, gambling, for abusing the power of his office, for any brutal or indecent act, for taking money, property or valuable thing other than his legal salary or fees, as a consideration for doing or omitting to do any particular act, or refusal to make an arrest in a proper case, or for aiding in the escape of those charged with violations of the ordinances; and it is made the duty of the city council to carefully and honestly enquire as to the truth of the complaint, and if they find the accused guilty, they shall forthwith, by order to be entered upon the journal, remove him from office. In order to carefully and honestly enquire as to the truth of the complaint, the council must investigate it. In order to investigate it, the council must hear evidence and, from the evidence, the council must pronounce him "guilty" or "innocent." The statute clearly contemplates that the city council shall hear the evidence for him as well as that against him. It

contemplates notice and a reasonable time to prepare for trial. This interpretation of section 439 is supported by able authority. Mecham on Public Officers, section 454, says:

"In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing. But on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal can not, except by clear statutory authority be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense."

Throop on Public Officers, section 344:

"A constitutional provision, empowering the governor to remove 'any officer whom he may appoint,' includes officers appointed by him by and with the advice and consent of the senate, and extends to cases for which other specific remedies are provided. And where such a provision specifies the causes for which he may thus remove, but prescribes no mode of exercising the power, the governor may determine that such cause exists, upon such evidence and in such mode as he deems proper. But he can exercise the power only for one of the causes specified, and upon charges specifying the particular act, omission or other ground of removal; and the officer must have notice thereof, and a reasonable opportunity to be heard in his defense; and the governor has judicial power to decide upon the proofs."

The same author in section 364 says: .

"When office held during good behavior or for fixed term, notice required. As already stated, this is the common law

rule in all cases, except where an office is held, absolutely at pleasure. In this country, the rule is, that where an officer holds his office for a certain number of years, 'if he shall so long behave himself well,' he cannot be removed, even for misbehavior, without notice and a hearing. So where he is appointed for a fixed term, and removable only for cause, he can be removed only upon charges, notice, and an opportunity to be heard. Thus, in Pennsylvania, where a statute provided, that the superintendent of common schools had 'the power of removing any county superintendent, for neglect of duty, incompetency, or immorality,' it was held that a county superintendent could not be removed for any cause, except one of those enumerated in the statute; and that before he could be so removed, there must have been a charge against him, notice to him of the accusation, the hearing of evidence in support of it, and an opportunity given to him of making his defense. The doctrine that an officer can be removed only upon notice, and after a hearing, where the tenure of his office is during good behavior, or until removed for cause, or for a definite term, subject to be removed for cause, is recognized in other American cases, and may be regarded as settled law in this country. And a removal without notice and a hearing, in either of these cases, is erroneous and void."

In the case of *State ex rel Dennison v. City of St. Louis et al*, 1 S. W. 757, the supreme court of Missouri says:

"Where an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. (*Field v. Com.* 32 Pa. St. 478; *Ex parte Hennen* 13 Pet. 230.) But where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having the power to remove. (*Gaskin's Case,*

8 Term R. 209; *Field v. Com., supra; State v. Bryce*, 7 Ohio St. pt. 82; Dillon's Mun. Corp. [3d Ed.] par. 250-254.)

And in the same opinion:

"Thus it will be seen that, in case of the suspension of an elected officer, the charter is specific in allowing him time and opportunity to be heard, and in case of suspension he must have a copy of the charges; but in case of the removal of an appointed officer no such specific provisions are made. It does not follow from all this, as is contended by the defendants, that the appointed officer is entitled to no notice. More prominence is given in these charter provisions to the removal of an elected officer than the removal of an appointed one, and, as to the former, the charter goes more into the details of the proceedings; but the charter does not say, nor is it fairly deducible therefrom, that an appointed officer may be removed without notice. When the removal is not discretionary, but must be for a cause, as is the case here, and nothing is said as to the procedure, a specification of the charges, notice and an opportunity to be heard are essential. This we think is the result of the authorities before cited. The proceedings in this case are wanting in all these requisites; for if, indeed, any charges were ever made against the relator at all they were the product of the minds of the members of this committee, and by them kept from the knowledge of the accused."

Many other authorities might be cited, but we shall not attempt to exhaust the list. However, we cannot refrain from quoting the rule as announced by Judge Dillon, the greatest writer on municipal law. In his section 254 of vol. 1, fourth ed. of Dillon on Municipal Corporations, it is said:

"And first, the officer is entitled to a personal notice of the proceeding against him, and of the time when the trial body will meet. It is not necessary that the notice, citation or summons set out the charges in detail, but it should con-

tain the substantial fact that a proceeding to amove is intended. The analogies of the ordinary procedure in the courts of the state (in the absence of statute or by-law) may be followed, respecting such details as the notice of summons, mode of service, etc.

"Notice may be dispensed with: 1. By appearance and answer to the charges. 2. By a total desertion of the place, so that it is not practicable to give the notice; as where the officer has permanently, not temporarily, left the municipality and resides constantly · elsewhere with his family. Though he may have been absent or left the borough, yet if he return and be in the place at the time of the amotion, he is entitled to notice. If the amotion be for good cause, such as conviction of an infamous crime, or the repeated declaration of the officer that he would not discharge the duties of his office, while it would be more regular to give the notice, yet its omission will not entitle him to a mandamus to be restored; for if restored he could be amoved again, and the courts will not order a restoration where they can see that there is good ground of removal, and that the order to restore would be without practical and useful effect. With these exceptions the party is entitled to notice of the intention to amove, so that he may have full and fair opportunity to be heard in his defense."

To the same effect is the case of *Board of Aldermen of Denver v. Darrow*, 22 Pac. 784.

The purpose of this notice, as stated before, is to give the accused an opportunity to prepare his defense; but where an officer can be removed for cause alone, the burden is upon the accuser to make out his case, before the accused can be expected to introduce evidence in his defense. This rule, however, is subject to this apparent exception: the legislature may provide that an officer can be removed for cause

only, yet if other language is used which clearly excludes the hearing of evidence: that is, if the statute makes the removing officer the sole judge of the existence of such cause, no evidence will be required; as, for instance, in Massachusetts it was held that a statute allowing a removal by a municipal board for "such causes as it may deem sufficient and may assign in the order of removal," authorizes a removal without a hearing; but the court held that the statute clearly intended to leave the whole question with the board for its determination, without evidence. Therefore, the Massachusetts statute, when closely analyzed, is a delegation of absolute power of removal, without hearing, for whatever reason the board may see fit; but when the removal is made the board are to make a record as to the reasons thereof.

Unless the statutes exclude notice and hearing, the overwhelming majority of authorities hold that both are implied. Let us notice further what the law writers say upon this subject. Dillon on Municipal Corporations, (4th ed.) vol. 1, sec. 255, says:

"There must be a charge, or charges, against him, specifically stated with substantial certainty; yet the technical nicety required in indictments is not necessary. And reasonable time and opportunity must be given to answer the charges, and to produce his testimony; and he is also entitled to be heard and defended by counsel, and to cross-examine the witnesses, and to except to the proofs against him. If the charge be not denied, still it must, if not admitted, be examined and proved."

Throop on Public Officers, sec. 358, is as follows:

"As we have already shown, where the statute requires, expressly or impliedly, a hearing or trial, as distinguished from a mere 'explanation,' the charges must be proven by

testimony, and the accused has the right to cross-examine the witnesses produced to sustain them, to produce witnesses in his defense, and to be assisted by counsel." And to the same effect is Mecham on Public Officers, sec. 454, and *Board of Aldermen of Denver v. Darrow, supra.*

In *Dullam v. Willson* (Mich.) 19 N. W., 112, it is said:

"The line of authority is not by any means exhausted, but enough cases have been cited to show that the action of the governor in this case, cannot be upheld as a legal and proper exercise of the power conferred upon him. There must be charges specifying the particulars in which the officer is subject to removal. It is not sufficient to follow the language of the constitution. The officer is entitled to know the particular acts and neglect of duty, or corrupt conduct, or other act relied upon, as constituting malfeasance or misfeasance in office, and he is entitled to a reasonable notice of the time and place when and where an opportunity will be given him for a hearing, and he has a right to produce proof upon such hearing. What length of time notice should be given we do not determine; it must depend, in a great measure, upon the circumstances of each case.

"I have examined carefully the authorities cited upon the brief of the learned counsel for the relator in support of the position that no notice is required to be given, and that the action of the executive is final and conclusive. It is sufficient to say, without commenting specially upon them, that the reasoning of those cases does not commend itself to my judgment. They appear to me to be opposed, not only to the decided weight of authority, but also to the fundamental principles of justice."

The next question to be determined is as to whether the removal for cause upon evidence is a judicial act. We have searched the books diligently to find authority holding the negative of this question, and while a few such cases are re-

ported they are not, in our opinion, founded upon logic and correct legal principles. It is sometimes quite difficult to distinguish a judicial act from one that is administrative; but a hearing such as is contemplated by the statute under which Christy was sought to be removed is clearly a judicial inquiry, and can only be had before one clothed with judicial authority. Were it not that the question has been heretofore considered by the bench and bar of the territory, we would dismiss it with the simple statement of the rule, but inasmuch as the contrary has been strenuously contended, we deem it expedient to refer to a few of the many authorities sustaining us. Dillon on Municipal Corporations (4th ed.) vol. 1, sec. 253, says:

"Respecting the proceedings to amove, it has already been observed that they must be had by and before the authorized body duly assembled, in conformity with the rules on that subject, which are elsewhere stated. The proceeding in all cases, where the amotion is for cause, is adversary or judicial in its character; and if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed."

Mecham on Public Officers, section 455, says:

"Proceedings for the removal of an officer for cause are judicial in their nature, and must be had before tribunals clothed with judicial powers. The fit and appropriate tribunal, therefore, in ordinary cases, is the court of law, but this judicial power may be, and often is, expressly conferred upon the governor, mayor, or other officer or board having the power of removal. The proceeding being thus a judicial one, the power must be exercised under the same limitations, precautions and sanctions as in other judicial proceedings."

Throop on Public Officers, section 379, says:

"Where the statute provides that an officer may be removed, but 'only for cause and after an opportunity to be heard,' the power thus granted 'is not an arbitrary one, to be exercised at pleasure, but only upon just and reasonable grounds, and then not until after notice to the person charged, for in no other way could he have 'an opportunity to be heard.' The proceeding, therefore, must be instituted upon specific charges, sufficient in their nature to warrant the removal; and then, unless admitted, proven to be true.' The person charged has also the right to 'cross-examine the witnesses produced to support the charges, call others in his defense, and in these and other steps in the proceedings to be represented by counsel. In no other way could the person sought to be removed have a due hearing, or 'an opportunity to be heard,' and this condition must be complied with before the power of removal is exercised. It follows, therefore, that the proceeding is judicial in its character, and as a necessary consequence, is subject to review by a writ of *certiorari* issued by the supreme court, in the exercise of its superintending power over inferior tribunals and persons exercising judicial functions.' And, inasmuch as the proceeding is judicial, if one of the members of the board who is interested in the subject of the complaint is not present, and his presence is necessary in order to make a quorum, the removal is void."

And again the same author says in section 346: "* * Where specific causes are required, and a notice and a hearing must be had to render a removal lawful, the removing officer or body proceeds in a judicial manner, so that the decision may be reviewed by the courts." And the supreme court of New York in *People ex rel. Mayor v. Nichols*, 79 N. Y., 558, states that, where an officer can be removed only for cause, upon complaint, that the accused is entitled to notice and a hearing, and to be represented by counsel, and that the proceeding for removal calls for the exercise of judicial power.

In the case of *Dullam v. Willson* (Mich.) 19 N. W. 112, the supreme court of Michigan was called upon to interpret the following paragraph of the state constitution:

"The governor shall have power and it shall be his duty, except at such time as the legislature may be in session, to examine into the condition and administration of any public office, and the acts of any public officer, elective or appointed, and to remove from office for gross neglect of duty, or for corrupt conduct in office, or any other misfeasance or malfeasance therein, either of the following state officers, to-wit: The attorney-general, * * * or any other officer of the state, except legislative and judicial, elective or appointive, and to appoint a successor for the remainder of their respective unexpired term of office, and report the causes of such removal to the legislature, at its next session."

In a carefully prepared opinion, in which Chief Justice Cooley participated, and in which he concurred as to the rules contended for here, that court said:

"It will be observed that the section of the constitution under consideration only authorizes the governor to remove for specified causes. He is not authorized to exercise the power at his pleasure or caprice. It is only when the causes named exist that the power conferred can be exercised. It follows as a necessary consequence that the facts must be determined before the removal can be made. It is also clear that the fact must be determined by some tribunal invested with judicial power, for a determination whether specified causes exist is an exercise of judicial functions. Judicial determination of facts must rest upon and be preceded by notice, proof and hearing. And the first question is, what is the proper tribunal in which such facts are to be ascertained? In my opinion this provision of the constitution requires no legislation to make it effective. Read in the light of the history of the times, and the surrounding circumstances when

it was adopted, the grant of power is to the governor, coupled with a duty to examine into the condition and administration of any public office, and to examine into the acts of any public officer; and to remove from office for gross neglect of duty, or for corrupt conduct in office, any of the officers specified. The amendment for this purpose clothes him with judicial power. It is implied in the grant, and without it the grant would be nugatory and ineffectual to accomplish the purposes for which it was given."

Again, in *People ex rel. Clay v. Stuart,* (Mich.) 41 N. W. 1091, this same court reiterated the holding in the case of *Dullam v. Willson, supra,* thus:

"There can be no doubt that the removal of a person from his office for cause involves the exercise of judicial power. Holding and exercising an office to which a person has been elected, during the term for which he has been elected, is a right of which he cannot be deprived without due process of law, and this requires notice to the party, a hearing, and determination."

Nor is this all: The same court in the case of *Fuller v. Ellis,* (Mich.) 57 N. W. 33, while distinguishing an office created by the legislature from those named in the constitution, and announcing the rule that the legislature which creates an office may, unless prohibited by constitutional provision, abolish it, expressly approves the doctrine enunciated in the two cases just referred to.

The supreme court of West Virginia, in the case of *Arkle v. Board of Com'rs.,* 23 S. E. 804, through Justice English, said:

"We are aware of no right which is clung to with more tenacity, and about which more feeling is engendered, than in regard to the tenure of public office; and in determining

the questions arising upon these contests, intricate questions of law must frequently present themselves for determination. An officer has a right to an office to which he has been fairly and legally elected, and to the emoluments arising therefrom, and he should not be deprived of them without an opportunity of raising all proper legal questions for his protection, and having them judicially determined."

And in the same decision:

"Can we say that, when charges are preferred against an officer, a justice of the peace, which proceeding has for its avowed object his amotion from office, and which prays that process and notification be issued against him, and that said charges be heard, and that such action and other legal proceedings be had by said board of commissioners as by law they may deem necessary and proper, such proceeding is not in reality a suit, and it does not necessarily require the determination of intricate legal questions, and, in short, call for a judicial investigation, that it is not a judicial hearing? This question must be answered in the negative. While we are aware that the cases of *State v. Hawkins,* 44 Ohio St. 98, 5 N. E. 228, and *Donahue v. Will Co.,* 100 Ill. 94, and *Stern v. People,* 102 Ill. 541, hold that the amotion of a public officer is not a judicial power, but is ministerial or executive, and perhaps some other cases in Illinois hold the same, yet the great weight of authority holds such action to be judicial."

Justice Holt, in concurring in the above opinion, very ably announces the rule by which a judicial act may be destinguished from one that is executive or administrative. This opinion is entitled to great weight because concurred in by lawyers of learning and experience, and although the decisions of some of the other courts are cited more frequently, the opinions of none show more research and care in their preparation. See also *Hodges v. Com'rs. of Lewis and Clark Co.,* (Mont.) 1 Pac. 748; *State ex rel. Police Com'rs. of Jersey*

*City v. Pritchard et al.,* 36 N. J. 101; *Page v. Hardin,* 47 Ky. 672.

. But why cite other authorities? On the one side are many well considered opinions by our ablest courts, as well as recognized text-writers like Cooley, Dillon, Throop and Mecham, against which stand the decisions of two or three states, whose opinions announce that the removal of a public officer for cause is not a judicial act, without showing us by reason or well considered authority why, under our system of laws, it has changed from a judicial act to the exercise of executive or political power. Surely not upon the theory that an office is not property, because the right to enjoy the honor and emoluments of an office within the limitations stated in this opinion, are equally as sacred; and it must be conceded that, wherever one is entitled to enjoy any right, even though it be not property, he may invoke the aid of the judicial power of the state to protect him in the enjoyment of the same, and, as a rule, it is the only power that can afford him relief. It has been repeatedly held that the power to appoint one to an office, unless restricted by statute, carries with it the inherent right to remove, and we readily assent to this dotcrine, but such removal is not judicial in any sense; but, under a statute like ours for the removal for cause of a city marshal, the officer is entitled to notice, to an opportunity to introduce evidence in his defense after a case has been made out against him, and to be represented by counsel; and the hearing of this evidence, weighing the same and pronouncing judgment of "guilty" or "not guilty," is the exercise of judicial power, which cannot be conferred upon a city council in this territory, without a provision for

review in or appeal to the courts of the territory as the organic act vests that power in certain named courts.

It follows, therefore, from these observations that Christy never was removed from his office, and that the action of the city council was absolutely void, and in no way affected his right to retain the possession of the property in question. The petition, the alternative writ, and the return of Christy all clearly show that he was at that very time the duly elected, qualified and acting marshal. It is true that the writ alleged that he had been removed from his office, but that same writ recited facts which show that this attempted removal was without any authority, and was an unwarranted interference with a public officer in the discharge of his duties. As to whether the officer was faithful or derelict in his duties, honest or venal, we express no opinion, as we have no evidence before us touching that matter; but, whether guilty or innocent, when charged, the law afforded him the right to be heard and this right the courts will protect. We condemn in unmeasured terms corruption of every kind in office, and as to whether the city council should have the power to remove a city marshal we express no opinion, as that must be left to the legislature to decide. We simply hold that at this time the power does not exist. The writ should have been denied.

For the reasons herein stated, the judgment of the lower court is hereby reversed, and the case remanded, with directions to deny the writ, and enter judgment against the appellee for all costs.

Irwin, J., who presided in the court below, not sitting; Pancoast, J., dissenting; Burford, C. J., absent; all the other Justices concurring.