### SHOFFNER, Co. Supt., v. SMITH.

No. 22657. Opinion Filed Dec. 1, 1931.

Rehearing Denied Feb. 9, 1932.

Roy Paul, Co. Atty., B. W. Carter Asst. Co. Atty., Ferguson & Semple, and John L. Boland, for plaintiff in error.

McDonald & McDonald, for defendant in error.

KORNEGAY, J. This is a proceeding in error, brought by the county superintendent of public instruction of Bryan county, to relieve himself from the obligations to obey an order of mandamus, made originally in the alternative, by the district judge, and later peremptory by the district court. The findings and judgment complained of can be found on page 89A of the record, and are as follows:

#### "Findings of Fact.

"Now, on the 27th day of July, 1931, the court after hearing the testimony of the witnesses introduced by the plaintiff and the defendant and the argument of counsel, makes the following findings of fact:

"That this plaintiff, Joe Smith, on the

2nd day of July, 1931, entered into a legal and valid contract with the school board of school district No. 51, Bryan county, Okla.. under and by virtue of which contract the said Joe Smith was employed to perform the duties of superintendent and teacher for the Platter school for school district No. 51, Bryan county, Okla.

"That the said Joe Smith at the time of making said contract with said school board was the holder of a valid certificate or B. S. degree qualifying him to perform said duties in said county for said district; that said contract was in all respects made and executed in strict compliance with the laws of the state of Oklahoma governing such matters and was made and entered into by said school district board at a legal meeting held for that purpose by said school board, and was duly signed by L. S. Smith, director, R. E. Sims, clerk, and E. P. Hartwell, member, the said persons being the duly elected, qualified and acting members of said school board.

"The court further finds from the testimony that the said Joe Smith was not guilty of incompetency, cruelty, negligence, or immorality, but that according to all of the testimony offered in the case, and the court so finds, he was competent and qualified in all particulars.

"The court further finds that the said defendant, Sherl Shoffner, found and held the said plaintiff to be competent and qualified and guilty of no offense that would bar him from teaching school in Bryan county, Okla., and had offered to approve his contract to teach school in Bryan county, Okla., in some other district. The court further finds that the refusal of the county superintendent, the defendant herein, to approve said contract was based on no legal justification whatsoever, but was founded simply on the personal desires of the said defendant, Sherl Shoffner.

"The court further finds that the said Sherl Shoffner agreed to countenance a trade of contracts between the said Joe Smith and one Earnest Sturch.

"Conclusions of Law.

"The court therefore concludes as a matter of law that the peremptory writ of mandamus should issue; that it was plainly the intent of the Legislature that the local school boards should be the sole power authorized to make legal contracts with teachers to teach in their schools, and that the only restriction upon that right was that they could not employ teachers who were guilty of incompetency, cruelty, negligence or immorality; and that when the board had employed a teacher who was qualified and competent, who was not guilty of immorality, or negligence, that it then became the ministerial duty of the superintendent to approve such contract.

"The court concludes as a matter of law that it was not the intent of the Legislature of this state to put it in the power of one man, the county superintendent, to set aside and disregard the plain intent and wishes of the local community, the community most vitally affected by such an act. The court concludes as a matter of law that the duty sought to be enforced in this case is clear and indisputable and free from all doubt and uncertainty. To give other effect to the facts in this case would make it possible for the county superintendent of this county to totally disregard the wishes and the express written desires of the people expressed through their local representatives, the school boards.

"The court does not hold that it is the duty of the county superintendent to approve all contracts regardless of the character of the persons employed, and if there was any testimony before this court holding or showing that the plaintiff, Joe Smith, was incompetent or irresponsible, this court would hold that a writ of mandamus would not lie, but in this case no such allegation is made; no such proof is offered.

"The peremptory writ of mandamus will therefore issue.

"Both plaintiff and defendants save their exceptions to the findings of fact and conclusions of law.

"Porter Newman, District Judge.

"Indorsed:

"No. 10143 Joe Smith v. Sherl Shoffner, Co. Supt. Findings of Fact and Conclusions of Law. Filed in the office of the Court Clerk Bryan County Aug. 17, 1931. L. W. Hughes, Court Clerk, By L. W. Hughes."

The proceeding originated in an educational administrative matter. Its progress developed into the sensational, and its culmination resulted in conclusions as to legislative policy, followed by mandamus alternative, changed by testimonial evolution into mandamus peremptory. The evidence in a general way was a recital of the relations of the parties, and at times bordered on the salacious. Plaintiff was a married man of family. He had a college degree of B. S., conferred by the Southeastern Teachers College, that was relied on in the court below, and in the oral argument here, as evidence of competency to teach the Platter school in district No. 51 in Bryan county. The county superintendent took office July 6, 1931, and there was shortly thereafter presented to him for approval the contract of defendant in error with the school board of the district to teach the school for the school year 1931-32, on its face calling for salary for ten months at $175 per school month. The teacher was required to become a mem-

ber of the county and state educational association, and to attend all educational meetings called by the county superintendent, and to co-operate with the county superintendent in the development of educational interests in the county, and the school board agreed not to deduct from the salary of the teacher for any loss of time so occurring. The plaintiff's interpretation of the contract, as developed on page 23 of the record, was that he was entitled to 12 months' salary for nine months work, and he had so taught at Platter in previous years. At page 25, the plaintiff said there was nothing unusual about teaching nine months and receiving pay for twelve months.

Charges of gross misconduct of plaintiff, in the way of drunkenness, and improper proposals to female acquaintances, who bore relations to the school, were brought to the attention of the county superintendent. These the plaintiff explained by admitting that he drank sometimes, but had never been intoxicated, but denied ever going to the school with whisky. He was charged with intoxication while driving an automobile on the highway. He explained it by stating the circumstances. He was driving 45 miles an hour on a misty night, with poor lights, and ran into a ditch. As to improper proposals, and making "dates," he explained these things by saying it was merely an invitation to go "swimming," while the young lady, testifying concerning the date, said: "He just said, 'Let's go somewhere,' and I laughed it off, and that was all that was said." She said she did not know how many times he had tried to "make a date," and it was just in a "joking way, that is all," and being asked about knowing about the plaintiff's meaning of "Let's go swimming," she replied. "I didn't know whether he did or not." Other charges were made of neglect of school work, and it appeared that practically each week the plaintiff had been away. His explanation was that classes had not suffered, and that he had been on philanthropic rather than philandering expeditions.

After a motion for new trial and notice of appeal, the case comes here regularly by case-made. Briefs have been filed by the county attorney, Roy Paul, and B. W. Carter, assistant county attorney, for the plaintiff in error, the county superintendent. On behalf of the defendant in error, a brief has been filed by Messrs. McDonald & McDonald, and a reply brief has been filed by the county attorney and the assistant county attorney, and there has been added to this reply brief the names of Messrs. Ferguson & Semple, and John L. Boland, as of counsel for plaintiff in error.

The cause was argued by the county attorney on the one side, and by one of the attorneys on the brief on the other side and also by Mr. W. E. Utterback, an attorney of Durant, Okla. The argument adduced on the side of the county superintendent tended to establish the position that he was convinced that the plaintiff was not a fit person, morally, to be granted the privilege of teaching the children in Bryan county, or being superintendent of a school therein. The argument advanced on the other side was that the plaintiff had a B. S. degree, and was qualified to teach school, and to superintend the school, and that the local school board had made a contract with him for the purpose of teaching, and that it was necessary to have the approval of the county superintendent in order to draw the salary. The argument is further made that it was a matter that a court should interfere with by mandamus, and compel the superintendent to approve the contract in accordance with the form that the contract was drawn on, which left a blank for such approval. At the base of the form there appears a statement as to the law not allowing the teacher to draw pay, except pursuant to an approved contract. And also there was an oath of allegiance to be taken by the teacher to support the Constitution of the United States and of the state of Oklahoma.

The briefs set out the evidence that was adduced before the court. and the statements therein contained as to what the evidence was, and the arguments adduced therefrom, both for and against, are somewhat startling, both as to facts and as to law. This court has practically decided, on more than one occasion, the law in this case, and it is frankly admitted by the attorney for defendant in error that unless this court overrules its former decisions, his client will never get the money, and strong urging is made that we overrule the case of Means v. Vernon, hereinafter referred to. It is urged in one brief that there is not a scintilla of evidence to justify the superintendent in believing that Mr. Smith was not qualified to teach school in Bryan county; in the other that the evidence was the contrary.

These challenges have necessitated our examination in full of the testimony submitted to the court below. That examination is by no means reassuring. Undoubtedly there was made a prima facie case of the complete unfitness of the plaintiff below to occupy

the position of superintendent of schools at Platter, as measured by the usual standard.

The geography of Platter shows that it is in the southern part of the county, and that Bryan county is very richly endowed with streams of varied kinds. The Clear Boggy, according to the map, bounds it on the northeast, the Washita on the west, the Red on the south, and in its confines are found the Blue and the White Grass. Surrounded by so many waters, and possessed of a car, and it being in the months of the summer, the explanation of the plaintiff about going swimming, or, as one of the ladies put it, "somewhere," may have been the result of his surroundings, aided by an undesigning mind.

Whether rightfully or wrongfully, the superintendent did not think the plaintiff was fitted, and did not think he should approve the contract. It appears to us that the superintendent not only was justified in guarding, but was required to guard the interest of the taxpayers, and children of the county, as against contracts made as this one was. We have practically held in the case of Means v. Vernon, 108 Okla. 123, 235 P. 163, that his discretion in this matter should not be interfered with by the court. Evidently the remedy for the conduct of the superintendent is at the ballot box, if the people have a grievance, and is not in the courts.

In this case, learned counsel have struggled hard to get the doctrine established that the local school boards, practically 70 in number, have more judgment than the one county superintendent. But the law has required the superintendent of public instruction to perform certain duties, and he has been sworn to perform those duties, and is under oath and financial bond so to do. We do not think that the lower court was within its rights in granting this mandamus.

By reference to the statute on the subject of the duties of the superintendent, C. O. S. 1921, and the citations put there by the annotater, we probably can get additional light, other than that shed by the Means Case, upon the subject, though the light of that case shines forth as a beacon light from the hills, and the meaning of the court in that case could scarcely be misconstrued.

Most clearly the approval of the contract in a case of this character calls for discretion of the highest order. The office of superintendent of public instruction for a county is clearly perpetuated in article 17, sec. 2, of the Constitution. Section 10311, C. O. S. 1921, provides for the election by the electorate of the county of a county superintendent of public instruction, and the other sections prescribe duties for him. The name "superintendent" carries with it its own definition, and shows that he is above somebody, and required to look after the welfare of the schools, and we think that he is above the local school boards. Under section 10311 is an annotation of the case of School District No. 17 v. Zediker, 4 Okla. 599, 47 P. 482, and the annotator says that the court holds that the powers of the superintendent are judicial, and cannot be reviewed by the court in the absence of abuse. The reason given is stronger against the mandamus order in this case than the annotator expresses it.

As applied to the case here, and the responsibilities of the superintendent, and the necessity for safeguarding the morals of our children and their teachers, we believe that the superintendent below was fully convinced of the justice and necessity of disapproving this contract. Whether the plaintiff was guilty of what he was charged with or not, for the purposes of this case, would not be controlling in every particular, for the reason that the superintendent had his duty to perform, and he had a reasonable ground for this refusal, and one that appealed to his conscience, and under these decisions the superintendent could be no more controlled in acting on that which was within his discretion, by mandamus, than the court that granted it could be controlled by mandamus in the manner of performing a discretionary duty. As to the people that are concerned in this case, it is not so much the attorneys in the case and the litigants as those who will make the future citizens of this state. It is a proposition largely of child welfare. The Bible tells us of the decision of Solomon whereby he discovered who was the true mother when the two women were claiming the child. Perhaps the true mother in this case will be discovered and others will rise to call her "blessed" in after years in Bryan county. We should no more sin against the child now than in the days of the patriarchs. The exclamation of a son of Jacob, as found in the 22nd verse of the 42nd chapter of Genesis, is called to mind by a review of this case, and is as follows:

"22. And Reuben answered them, saying Spake I not unto you, saying, Do not sin against the child; and ye would not hear? therefore, behold, also his blood is required."

And experience, as embodied in Proverbs,

22nd chapter, 6th verse, is just as convincing today as when the language was crystallized, as follows:

"6. Train up a child in the way he should go; and when he is old, he will not depart from it."

Phe superintendent appears not to have been long experienced, from this record, in dealing with the school situation, but his idea of preserving the morals of the community and the reputation of the schools in his charge is certainly to be commended. We think it would bring inextricable confusion for the courts to interfere with county superintendents of public Instruction under the circumstances detailed in the evidence in this case.

Recent utterances of this court can be found in the case of Herndon v. Excise Bd. of Garfield Co., 147 Okla. 126, 295 P. 223.

The second paragraph of the syllabus to that case is as follows:

"Mandamus will not be awarded unless a clear legal right thereto exists, nor even where the legal right is clear, where the issue of the writ would disturb official action, or create disorder or confusion."

The writ of mandamus in this case is discharged, and the lower court is directed to dismiss the proceeding, all at the cost of the plaintiff below, defendant in error.

RILEY, CULLISON, and ANDREWS, JJ., concur. HEFNER and McNEILL, JJ., concur in conclusion. LESTER, C. J., not participating. CLARK, V. C. J., absent. SWINDALL, J., dissents.

---

SWINDALL, J. (dissenting). I am not expressing my views upon the sermon delivered in the majority opinion; however, I fail to see where it has any proper place in a judicial opinion and I cannot agree with the rule of law announced in the majority opinion bottomed thereon. So I shall confine my remarks to the law as found in the statutes and reported cases. That portion of the Act of the Legislature of 1913. chapter 219, approved May 22, 1913, and brought forward in the Compiled Oklahoma Statutes, Annotated, 1921, relative to the school district boards contracting with and hiring teachers, is identical with section 7 of chapter 86 of the Laws of Kansas of 1869, page 181, and was first construed by the Supreme Court of that state in School District No. 5 v. Wm. D. Colvin, 10 Kan. 283. Section 7 of the Kansas laws is as follows:

"Sec. 7. The district board in each district shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing, and shall specify the wages per week or month, as agreed upon by the parties, and such contract shall be filed in the district clerk's office, and in conjunction with the county superintendent may dismiss for incompetency, cruelty, negligence, or immorality."

In construing this section Mr. Chief Justice Kingman, delivering the opinion of the court, said:

"Under the last clause of this section the district board in conjunction with the county superintendent may dismiss the teacher for certain causes, no matter what the terms of the contract may be. So far it is a new feature in the law intended as a remedy for any improvidence on the part of the board in making a contract. It would be a public calamity if a teacher employed for a year should prove negligent or immoral and there was no way to rid the district of such a teacher. It was wise in such a case to make provision by law for his discharge, and it was thought wise to connect the county superintendent with the board in any such action. If all the contracts were made as the one in this case is made, there would be no necessity for such enactment. The law was made for the benefit of the district. It does not prevent the board from making any other contract with the teacher. In this case they have made one which is not prohibited either by law or public policy. No one doubts that a contract hiring a teacher might be abrogated by mutual consent. So they may stipulate in advance, as in this case, what shall put an end to the contract. That contingency arose, and the board, with the previous consent of the teacher, put an end to the contract. There seems to be no doubt but what that part of the contract was valid."

In A. Laura Armstrong v. Union School District No. 1, Dickinson and Saline Counties, 28 Kan. 345, the syllabus reads:

"A school district board employed a school teacher, and the contract of employment contained among others the following stipulation, to wit: 'And provided further, that if by the inability or neglect of the said A. (the school teacher) the interests of the school shall suffer, the district board shall have full power to annul this contract, after one month's written notice.' Held, that such a stipulation is valid, and that under it and in accordance with its provisions, the school district board may alone, without any formal trial, and not in conjunction with the county superintendent, dismiss the school teacher for incompetency and negligence. from which the interests of the school suffer, notwithstanding the provisions of section 24 of art. 4 of the school laws. (Comp. Laws of 1879, p. 830.)"—

which is the same as the section of the Laws of 1869 heretofore quoted.

After citing School District v. Colvin, supra, the court said:

"At the time the facts occurred upon which that case arose, the same statute was in force which is now in force; and the contract in that case between the school district board and the teacher contained a stipulation reserving to the district board the right to discharge the teacher at any time when he should fail to give satisfaction to the board. In that case it was held that the stipulation was valid, and that under the stipulation the school district board had a right to discharge the teacher whenever he did not give satisfaction to the school district board, in accordance with his contract. The object of the statute was simply to provide that the school district should not so bind itself by contract that a school teacher could not be discharged at any time by the school board, acting in conjunction with the county superintendent, for incompetency, cruelty, negligence, or immorality; and it was not intended to prohibit the school board from making other provisions for the dismissal or the discharge of an incompetent, cruel, negligent or immoral teacher. The object of the statute was simply to furnish additional protection and safeguards to the efficiency and best interests of the public schools of the state, and it was not intended to take away any of the power of the school district boards to make contracts, which might also be for the protection of the best interests of the public schools. The object of the statute was not to take away such power as the school district board already had to discharge school teachers, but it was to confer upon the board, in connection with the county superintendent, other and additional powers."

The section of the Kansas statute was adopted in the Oklahoma Code of 1890-1893, and amended in some respects in 1905, and adopted in the Revised Laws of Oklahoma 1910, vol. 2, section 7824, and as amended reads as follows:

"The district board of each district shall contract with and hire qualified teachers for, and in the name of the school district, which contract shall be in writing, and shall specify the wages per week or month, as agreed upon by the parties, and such contract shall be filed in the district clerk's office, and, in conjunction with the county superintendent, may dismiss such teachers for incompetency, cruelty, negligence, or immorality. Whenever any person shall make and enter into a valid contract with any such district board to teach school in such district, such contract shall be binding upon such teacher until he has been legally discharged therefrom according to law or released therefrom by such district board in regular session; and until such

person shall have thus been discharged or released, he shall not have authority to make and enter into any valid contract with any other school district board or board of education in the state of Oklahoma, to perform services as teacher or instructor for a period of time covered by an existing valid contract which said person has made. No district board or board of education shall have authority to pay any money or issue any warrants for the payment of money to any person for services as teacher or instructor, except for services performed under and by virtue of a valid contract existing between such district board and such teacher to be paid."

Prior to the amendment of 1905 and the adoption of the Revised Laws of 1910 and while the section was identical with the Kansas statute, section 5799 of the statutes of 1893, the Supreme Court of Oklahoma Territory, in the case of School District No. 94. Grant County, v. Nellie Gautier, 13 Okla. 194, 73 P. 954. in paragraphs 2. 3, and 4 of the syllabus, held that:

"2. Notwithstanding the statute authorizes the board of a school district, in conjunction with the county superintendent, to dismiss teachers for incompetency. cruelty. negligence or immorality, such remedy is not exclusive, and the school board may contract with the teacher, giving the board authority to remove the teacher for these or other causes, and in such manner as the contract may provide.

"3. A school board having authority to dismiss a teacher, cannot arbitrarily exercise such power for personal reasons, or without sufficient grounds affecting the teacher's efficiency and usefulness. The board is required to act with discretion and judgment. and take all necessary steps to inform themselves, before proceeding to discharge a teacher for cause.

"4. The action of a school board, when authorized, in discharging a teacher. is not final or conclusive, and in a suit by the teacher to recover for the residue of the term, the question of sufficient grounds having existed to warrant the teacher's discharge, is one to be determined by the court or jury trying the case."

That approves the rule announced in the two Kansas decisions above mentioned. After statehood we find in 45 Okla. 680. 146 Pac. 711, the case of School District No. 18 of Creek County v. Ferguson, in which this court. in an opinion delivered by Mr. Justice Brown. quotes section 7824, Revised Laws 1910, and then says:

"This section was construed perhaps for the first time in Oklahoma in the case of School District No. 94 in Grant County v. Nellie Gautier, 13 Okla. 194, 73 P. 954, wherein Chief Justice Burford, of the territorial Supreme Court, said:

" 'If the school board may then make a contract authorizing them to discharge a teacher for incompetency or other good cause, how is this power to be exercised? Certainly not arbitrarily, and for mere personal reasons. There must exist a substantial cause, and the school board must take some definite and affirmative action to ascertain the truth. It will not be enough to accept vague rumor and neighborhood gossip emanating from dissatisfied pupils. It is the duty of the school board to visit the school, examine into the conduct and management of the school, and after an impartial and considerate investigation, if they find that the teacher is not coming up to the requirements of the contract, then they may safely discharge the teacher when the contract so provides. But their action is not conclusive; they do not act judicially, and cannot; and the jury must be the final arbiter of the existence of the grounds for removal'."

In the body of the opinion we find this language:

"Counsel for plaintiff in error endeavor to distinguish the case at bar from the case of School Dist. v. Gautier, supra, for the reason that, as he says, in the latter case the teacher was discharged and dismissed by the district board alone, and that in the instant case the district acted in conjunction with the county superintendent; but we think there is no difference in principle. The district board alone, or acting in conjunction with the county superintendent, could not arbitrarily discharge a teacher; and when a teacher is arbitrarily discharged, or discharged at all, if it is claimed the same was wrongful, malicious, or arbitrary, then the teacher has a right to have a jury, or a court sitting as a jury, pass upon the question of the justice or injustice of such discharge."

So, it will be noted that this court has held that the school districts, acting in conjunction with the county superintendent, in discharging a school teacher for incompetency, cruelty, negligence, or immorality, "do not act judicially and cannot," and that the jury must be the final arbiter of the grounds for removal. Certainly, if the district board, acting in conjunction with the county superintendent, in discharging a school teacher for the causes mentioned in the act, does not and cannot act judicially, then a county superintendent does not and cannot act judicially in approving a teacher's contract entered into between the teacher and the school district board. I admit that in Means, Superintendent of Public Instruction, v. Vernon, 108 Okla. 123, 235 P. 163, the court in the second paragraph of the syllabus holds that:

"All duties of public officials are either ministerial or judicial. A ministerial 'duty' is one described and defined by law with such precision as to leave nothing to the exercise of judgment or discretion."

I cannot agree with the rule announced that in every instance where a public official is required to exercise a discretion the same is a judicial discretion. Certainly, in the cases where the school district board, in conjunction with the county superintendent, discharges a teacher upon one of the grounds mentioned in the statute they exercise discretion, but such discretion is not a judicial discretion, as is held by this court in several decisions. The majority opinion cites School District No. 17 of Garfield County v. T. J. Zediker, County Superintendent of Public Instruction, 4 Okla. 599, 47 P. 482, as sustaining the holding of the court in this case. However, an examination of the Zediker Case will show that it holds that:

"The powers conferred upon the superintendent of public instruction to divide the county into school districts and to change such districts, are of a judicial nature, and in their performance require the exercise of a judicial discretion; and when exercised, unless there has been an abuse of such discretion, the courts cannot interfere."

In so far as the opinion in that case holds that the county superintendent exercises a judicial discretion it is in direct conflict with Christy v. City of Kingfisher, 13 Okla. 585, 76 Pac. 135, and State ex rel. Lee v. Channey, Mayor, et al., 23 Okla. 799, 102 Pac. 133. The case of Means, Superintendent of Public Instruction, v. Vernon, supra, is in direct conflict with School District No. 94 of Grant County v. Nellie Gautier, supra, and School District No. 18 of Creek County v. Ferguson, supra.

Each member of this court selects a law clerk and a stenographer. In doing so he must exercise a discretion as to the qualifications of such employees. The district judges appoint jury commissioners in each county in their respective judicial districts and these jury commissioners must exercise a discretion relative to the qualifications of the men selected for jury service. Each state and county official authorized to hire deputies must exercise a discretion in selecting deputies and in instances where the board of county commissioners are required to approve deputies employed by county officials the board of county commissioners must exercise a discretion in approving such deputies, but it is an administrative and not a judicial discretion. If every time a ministerial officer in performing an official duty is required to think he acts judicially, then the rule announced in the majority opinion is sound.

Under the rule announced in the majority opinion a teacher may be employed by a school district board and may be in every way qualified and competent to teach school in any school district in the state, but if arbitrarily or to gratify some whim of his the county superintendent refuses to approve such contract, the teacher has no tribunal to pass upon the question of the justice or injustice of the refusal of the county superintendent to approve the contract and such a holding may result in a manifest injustice to many teachers in this state. The majority opinion seems to hold that the educational institutions of the state shall be under the supervision and management of the county superintendents and that from his edict once pronounced there is no appeal, and all of the school district boards of the several counties of this state must bow in humble submission to this county officer who is himself a school teacher or one possessing the qualifications of a first grade school teacher elected to the office of county superintendent of public instruction. I cannot agree with this construction of the school laws of this state. Chapter 219, Session Laws 1913, being the act prescribing laws for the government of the common schools of Oklahoma, and repealing conflicting laws, and brought forward in the Compiled Oklahoma Statutes, 1921, chapter 86, commencing with section 10297 of article 5, which was in force at the time of the commencement of this action, section 1 of article 1, now section 10297, O. O. S. 1921, reads:

"Section 1. (10297, C. O. S. 1921.) The educational interests of the state shall be under the supervision and management of the State Superintendent of Public Instruction, subject to such limitations and restrictions as are, or may be prescribed by law; and he shall have and exercise the powers and perform the duties pertaining to such office."

Section 10301, C. O. S. 1921, provides that:

"Such Superintendent shall, at the request of any county or city superintendent of public instruction, give his opinion upon a written statement of facts on all questions and controversies arising out of the interpretation and construction of the school laws in regard to the rights, powers, and duties of district and city boards, school officers, and county superintendents of public instruction, and shall keep a record of all such opinions. Before giving any opinion which involves the construction of the school law, the State Superintendents shall submit the statement of facts to the Attorney General forthwith, for his opinion thereon."

Section 10304 provides that:

"Upon the written complaint of any person

stating that any instructor or person employed in any state or county educational institution is guilty of any offense involving moral turpitude or that said person has been guilty of obtaining money or anything else of value from any person and has not rectified same to the satisfaction of the injured person, the State Superintendent of Public Instruction shall take cognizance of same and take such steps as will be necessary to protect the patrons of said school and the citizens where said institution is located."

Article 5 of chapter 219, Session Laws 1913, relates to school district officers. Section 2 of article 5 prescribes the oath that members of the board shall take before entering upon the duties of their office. Section 17 of article 5 provides that the district board of each district shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing. There is nothing in the section or in any other section that provides for the county superintendent performing any duties in regard to the employment of teachers. That section does provide that the board in conjunction with the county superintendent may dismiss such teacher or teachers for incompetency, cruelty, negligence, or immorality. It also provides that the teacher or teachers employed by a school district, until he or they have been legally discharged therefrom according to law or released therefrom by such district board in regular session, and until such person shall have been thus discharged or released, shall not have authority to make and enter into any valid contract with any other school district board or board of education of the state of Oklahoma to perform services as teacher or instructor for a period of time covered by any existing valid contract which said person has made. Aside from acting in conjunction with the board in dismissing the teacher for incompetency, cruelty, negligence, or immorality, the county superintendent has no duties to perform except to determine whether or not the contract entered into between the teacher and the board is a valid contract. Assume that the school district board had incorporated into the contract here in the two cases cited from the Kansas Supreme Court or in the Grant County Case, it would be the duty of the county superintendent to determine whether or not such provisions were valid. It is also the duty of the county superintendent to determine whether or not the teacher has the educational qualifications to enter into the particular contract; that is, whether or not the teacher has a first, second, or third grade certificate or is a graduate from some school that qualifies him to teach in a particular district, and matters

of that nature. To hold otherwise is reading something into the act that is not there and placing the employment of school teachers for the several school districts of the state under the control of the county superintendent instead of under the district school boards, where the Legislature has placed the same. We do not want to be understood as criticizing the county superintendents of the state, as, in our opinion, they have important duties to perform in the educational system of the state, and the presumption of law is that they are performing their official duties. However, there is a like presumption that the school district boards are performing their duties; they are elected by the qualified electors of the school district and the electors of the school district are the persons most vitally interested in the affairs of their local district. The Legislature has granted to them the power to employ teachers in their respective districts and we do not think that the court has any authority to or should deprive them of that right. I am not passing upon the qualifications of the defendant in error. That is a duty for the school district board to perform. If he is the kind of a citizen that the majority opinion holds him out to the world to be, he is in my opinion not qualified to teach school in any district in the state of Oklahoma. If the defendant is not morally or otherwise suitable to teach in any other school district, and if it is the duty of the county superintendent to approve the teacher's contract, as the majority opinion holds, then the county superintendent of Bryan county would not be justified in approving his contract to teach in any other school district, so it does not appear to me that the court should give much consideration to the statement of the county superintendent as his reason for refusing to approve the contract of defendant in error to teach in the district involved in this action, for he states that he would have approved the contract to teach in another district in Bryan county. If such is the view of the county superintendent relative to the qualifications of the defendant in error, pictured as he is in the majority opinion, I am still constrained to the belief that the several boards of directors of the common school districts are better qualified to pass upon the moral and other qualifications of the teachers that they are called upon to determine than is the county superintendent. In my opinion it was not the intention of the Legislature to take away from the school district boards the power to employ a teacher, but as a matter of precaution it required school district boards to submit the contract to the county superintendent of public instruction of the county and it was for the county superintendent to determine whether or not the contract comes within the estimate of needs made by the school district board. Has the teacher the class or grade of certificate required of a teacher to teach the school in question? Has he already entered into a contract with any other school district as shown by the records in the office of the county superintendent? Is the contract valid as to provisions and covenants therein set forth? and matters of that nature. The county superintendent approves the contract, and if he is in doubt as to the same being valid as to form, he may submit the same to the State Superintendent and the State Superintendent may call upon the Attorney General for an opinion forthwith, but the county superintendent does not approve the teacher, this being a duty the board alone is authorized to perform.

For the reasons herein stated, I most respectfully dissent.