**SHOFNER, County Supt., v. MERCER.**

No. 23451.   Opinion Filed June 27, 1933.

Roy Paul, Co. Atty., B. W. Carter, Asst. Co. Atty., and John L. Boland, for plaintiff in error.

Utterback & Stinson and Priscilla Utterback, for defendant in error.

CULLISON, V. C. J.   Flossie Mercer, as plaintiff, instituted suit in the district court, seeking a writ of mandamus against S. L. Shofner, county superintendent of Bryan county, Okla., requiring said defendant to approve a contract entered into by and between Flossie Mercer and the school board of district No. 15, Bryan county, Okla. Defendant answered, in which he denied that any legal contract was presented to him for approval between plaintiff and school district No. 15. Bryan county, Okla. Defendant pleaded some additional facts, but upon the trial of said cause the issues settled to a question of the legality of said contract as the basis of defendant's refusal to approve the same. Plaintiff filed a reply. and upon the issues thus formed the case was tried to the court without a jury.

Upon the conclusion of said trial, the court found in favor of plaintiff. making the following findings of fact:

"That upon presentation of said contract to said county superintendent he refused to approve the same on the ground that the said contract was not entered into at a legal meeting of the board. The court finds that said contract was entered into at a legal meeting of the board and said contract was in all particulars in compliance with the requirements of the statute.

"The court further finds that in the exercise of his discretion the county superintendent abused the said discretion in refusing to approve said contract and that said county superintendent had no legal reason for refusing to approve the said contract, and that his investigation of the qualifications, standing and ability of Miss Mercer, the plaintiff herein, could have led him to only one correct conclusion, and that was that she was competent and qualified to teach, and that there existed no valid reason upon which the said defendant could base a decision finding that the contract should not be approved."

Thereupon the court directed the issuance of the peremptory writ of mandamus.

Defendant appeals to this court and raises a number of errors, but argues them under the headings: (1) That the court erred in the manner of determining this issue and issuing the peremptory writ of mandamus; (2) that the judgment is not sustained by the evidence. These are the only assignments of error of sufficient merit to justify discussion in this opinion.

The evidence in the case at bar discloses that plaintiff was a graduate of the Southeastern Teachers' College of Durant, Okla., holding a life certificate from said school; that she had 12 years' experience as a teacher, and had taught in district No. 15, Bryan county, Okla., prior to the year in question. She had entered into a contract with the board of said district prior to the 1st of July, and prior to the date of election in said school district; that at the election in said school district, one of the members of said district board was not re-elected, but a new member was selected to take his place on the school district board. Thereafter, on July 27, 1931, a meeting was called of the school district board to meet at 2:00 o'clock p. m. at the schoolhouse, for the purpose of employing teachers. At the appointed time for holding said meeting, V. D. Marshall, director, and T. A. Jones, member of the school board of district No. 15, met at the schoolhouse of said district and entered into a contract with plaintiff employing her as one of the teachers to teach in said school for the term of 1931-

1932. Immediately after the execution of said contract, the meeting adjourned and the teacher and certain members of the board went to the office of the county superintendent at Durant and presented the executed contract to the superintendent for approval. The clerk of said school district board would not concur in said contract. When plaintiff reached the office of the county superintendent at Durant, Granville Baxter, clerk of the board, was at the office of the county superintendent. The county superintendent refused to approve said contract upon the theory that the same was not a legal contract.

This presents for our consideration the very important question of whether or not a county superintendent can approve or disapprove contracts entered into by and between teachers and members of a school district board as he sees fit, or whether or not he must approve all legal contracts presented.

The law applicable to the case at bar is section 10367, C. O. S. 1921, as amended by chapter 34, art. 2, sec. 1, S. L. 1931:

"The district board of each district shall contract with and hire qualified teachers for, and in the name of, the district, which contracts shall be in writing. The contract shall specify the wages per week or month, as agreed upon by the parties, and one copy shall be filed with the district clerk, one copy filed with such county superintendent, and one copy retained by the teacher, and the board, in conjunction with such superintendent, may dismiss such teacher or teachers for incompetency, cruelty, negligence or immorality. Whenever any person shall make and enter into a valid contract with such district board to teach school in such district such contract shall be binding upon such teacher until he has been legally discharged therefrom according to law or released therefrom by such district board in regular session; and until such person shall have been thus discharged or released, he shall not have authority to make and enter into any valid contract with any other district board or board of education in the state of Oklahoma to perform services as teacher or instructor for a period of time covered by an existing valid contract which said person has made. No district board or board of education shall have authority to pay any money or issue any warrants for the payment of money to any person for services as teacher or instructor, except for services performed under and by virtue of a valid written contract approved by such county superintendent existing between such district board and such teacher to be paid; provided, it shall be unlawful for any school

district board to employ a person to teach who is related to a member of the board.

"The school district boards shall not have any authority to enter into contracts until after the beginning of the fiscal year for which said contract was entered; and no contract entered into by any school district board after the beginning of the fiscal year shall be binding upon the district until an estimate has been made and approved by the excise board for said district, but any contract entered into after the beginning of the fiscal year shall be binding upon the district unless canceled or annulled upon the approval of an estimate by the excise board. No contract so entered into shall be binding upon the school district unless at the time of making the contract the teacher sought to be employed holds a valid certificate in the county where the services are to be rendered for the time that the contract is made. * * *"

In our consideration of the section just quoted, we consider it important to trace the history and development of said section so as to arrive at a correct and proper interpretation to be applied to said section. The basis of said amended section as quoted was received from Kansas when this state adopted portions of the Kansas school law in 1893, which section was amended in 1905 and contained in the Revised Laws 1910 as section 7824. The Legislature in 1913 amended and re-enacted said section as section 17, article 5, of chapter 219, Session Laws of 1913, which said section was carried forward into Compiled Oklahoma Statutes 1921, as section 10367, and finally amended as we now have it by the Legislature of 1931. The Kansas law relative to the hiring of teachers by school district boards was section 7 of chapter 86 of the Laws of Kansas 1869, at page 181, and first construed by the Supreme Court of that state in School District No. 5 v. Wm. D. Colvin, 10 Kan. 283. Section 7 of the Kansas laws is as follows:

"Sec. 7. The district board in each district shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing, and shall specify the wages per week or month as agreed upon by the parties, and such contract shall be filed in the district clerk's office; and, in conjunction with the county superintendent, may dismiss for incompetency, cruelty, negligence, or immorality."

In construing this section, Mr. Chief Justice Kingman, delivering the opinion of the court, said:

"Under the last clause of this section the district board, in conjunction with the county superintendent, may dismiss the teacher for certain causes, no matter what the terms of the contract may be. So far it is a new feature in the law, intended as a remedy for any improvidence on the part of the board in making a contract. It would be a public calamity if a teacher employed for a year should prove negligent or immoral, and there was no way to rid the district of such a teacher. It was wise in such a case to make provision by law for his discharge, and it was thought wise to connect the county superintendent with the board in any such action. If all the contracts were made as the one in this case is made, there would be no necessity for such enactment. The law was made for the benefit of the district. It does not prevent the board from making any other contract with the teacher. In this case they have made one which is not prohibited either by law or public policy. No one doubts that a contract hiring a teacher might be abrogated by mutual consent. So they may stipulate in advance, as in this case, what shall put an end to the contract. That contingency arose, and the board, with the previous consent of the teacher, put an end to the contract. There seems to be no doubt but what that part of the contract was valid."

In A. Laura Armstrong v. Union School District No. 1, Dickinson and Saline Counties, 28 Kan. 345, the Kansas Supreme Court said (after citing School District No. 5 v. Colvin, supra):

"* * * The object of the statute was simply to furnish additional protection and safeguards to the efficiency and best interests of the public schools of the state, and it was not intended to take away any of the power of the school district boards to make contracts, which might also be for the protection of the best interests of the public schools. The object of the statute was not to take away such power as the school district board already had to discharge school teachers, but it was to confer upon the board, in connection with the county superintendent, other and additional powers."

We have just quoted the basic part of the section as embraced by the Kansas law and the decisions of the Kansas Supreme Court construing said section prior to the time that said section was adopted by this state, thereby making said constructions a part of the basic law.

Section 7824, R. L. 1910, which is the section under consideration, contains further and additional provisions not contained in the basic section of the Kansas law. Said section had been amended to provide

further, in substance, that where contracts are entered into, such contract is binding upon the teacher until legally discharged according to law or released, and until released or discharged, said teacher cannot enter into another valid contract with any other board of education covering the same period of the first contract. The final portion of said section is as follows:

"No district board or board of education shall have authority to pay any money or issue any warrants for the payment of money to any person for services as teacher or instructor, except for services performed under and by virtue of a valid contract existing between such district board and such teacher to be paid."

This is the first instance that the above quotation appears as a part of said section. The Legislature of 1913 rewrote our school law as chapter 219 of said Session Laws (1913). The section under consideration is section 17, article 5, chapter 219, S. L. 1913. That portion of said section just quoted, supra, was amended by inserting the word "written" between the words "valid" and "contract," and by inserting the words "approved by such county superintendent" after the word "contract," so that the concluding portion of said section just quoted, as amended in 1913, reads as follows:

"* * * by virtue of a valid written contract approved by such county superintendent existing between such district board and such teacher to be paid."

Said section was carried into Compiled Oklahoma Statutes of 1921 as section 10367, and was amended by the 1931 Legislature so as to contain the provisions set out in this opinion.

We consider it necessary to analyze this statute very carefully because of two decisions of this court wherein a portion of said section was construed, to wit, the case of Means v. Vernon, 108 Okla. 123, 235 P. 163, and Shoffner v. Smith, 155 Okla. 43, 7 P. (2d) 655.

The Means Case held that the approval of the county superintendent was necessary before a valid contract existed between the teacher and school district board, and that the act of the superintendent in approving such contract was judicial and not a ministerial act. The Means Case relies upon that portion of section 10367, C. O. S. 1921, which provides that no money should be paid "except for services performed under and by virtue of a valid written contract approved by such county superintendent ex-

isting between such district board and such teacher to be paid," as the sole authority for the holding that the county superintendent must approve the contract before said contract is valid.

The Shoffner Case relies in part upon the Means v. Vernon Case and the portion of the statute just quoted, supra.

If these two cases correctly construe the law, we should follow them, but if they do not correctly construe the law, they should not be followed and render a gross injustice to plaintiff.

When the statute was enacted in Kansas, it provided for the school district board and the teacher entering into the contract of employment, but no other official was to have any control over the execution of the teacher's contract, and said section so provided when placed in force and effect in Oklahoma Territory.

Said section, as contained in the Revised Laws of 1910, section 7824, contains certain provisions not included in the earlier section. The final portion of said section is:

"No district board or board of education shall have authority to pay any money or issue any warrants for the payment of money to any person for services as teacher or instructor, except for services performed under and by virtue of a valid contract existing between such district board and such teacher to be paid."

This is the first time that we find said section providing certain restrictions relative to the payment of the teacher's salary, but nowhere in said section as contained in the Revised Laws of 1910, is there any provision giving the county superintendent authority to approve or reject the contract. The other terms and conditions of the statute remained the same relative to contracting between the teacher and school district board. The Legislature in 1913 amended that portion of said section just quoted, supra, so that the latter part thereof reads:

"* * * except for services performed under and by virtue of a valid written contract approved by such county superintendent existing between such district board and such teacher to be paid."

The formal parts of said section pertaining to the hiring of a teacher by the school district board was not changed by the 1913 Session Laws. This brings to our consideration the important question of whether the insertion of said words in said section, "valid written contract approved by such

county superintendent," was such as to give the county superintendent dictatorial power in the approval of or rejection of contracts for the employment of teachers.

We further observe, in connection with said amendment just quoted, that shortly prior thereto the Legislature provided for a new method of handling the finances of such school district and provided that each district should make a financial statement showing the amount of money to be expended, etc., and that such financial statement should be approved by the county excise board. The county superintendent was a member of said excise board and has access to the approved estimates for each of the school districts within his county. It is common knowledge that the financial affairs of various school districts were not as well managed as they should have been and that it became necessary that there be some supervising authority who should determine whether or not the school district board had executed a contract with the teacher which came within the financial estimate made by the school district board and approved by the excise board.

We hold that the plain intent of said amendment in 1913 was to provide a check upon the finances of each district so that no district board should pay out any money to a teacher until said contract had been approved as being within the estimate provided for the payment of said teacher's salary, and that said teacher possessed the proper educational qualifications. If the Legislature in 1913 had intended to completely reorganize the procedure of employing teachers, they most certainly would have so indicated by changing said section pertaining to the employment of teachers. A very careful analysis of said section discloses that the first part of the same gives the district board power to hire qualified teachers and provides certain terms and conditions under which the contract should be made. The section further provides that if the teacher proves to be incompetent, cruel, negligent, or immoral, the board in conjunction with the county superintendent may dismiss said teacher. The only restriction therein imposed upon the board is that the county superintendent and school board should consider matters of dismissal together.

We further observe that section 10367, C. O. S. 1921, as amended by chapter 34 of the Session Laws of 1931, contains the following pertinent language:

"No contract entered into by any school district board after the beginning of the fiscal year shall be binding upon the district until an estimate has been made and approved by the excise board for said district, but any contract entered into after the beginning of the fiscal year shall be binding upon the district unless canceled or annulled upon the approval of an estimate by the excise board."

This provision provides protection to the district in the event no estimate should be approved by the excise board. But said enactment further provides that "any contract entered into after the beginning of the fiscal year shall be binding upon the district unless canceled or annulled upon the approval of an estimate by the excise board." The provision just quoted in no wise makes the liability of the school district conditional upon approval of the contract by the county superintendent, but makes the liability dependent upon the approval of an estimate by the excise board.

In the case of Frost v. School District No. 98, Payne County, 118 Okla. 57, 246 P. 432, this court passed upon a case where the teacher contracted with the school district board to teach school in said district. The contract was signed by the teacher and district board and was to be presented to the county superintendent for approval. The contract was presented to the superintendent, but he suggested that the regular form of contract be used and did not approve the contract. The district board then entered into a contract with a second person to teach. This court held that the first contract was a valid teacher's contract, pursuant to sections 10367 and 10368, C. O. S. 1921, although never approved by the county superintendent.

This decision was rendered after the decision in the case of Means v. Vernon, and in the Frost Case the court did not follow the holding in the Means Case.

The Frost Case substantiates our view of the statute under consideration.

The fact that the members of the school district board and teacher entered into a contract, made the same a good and valid contract, providing the teacher possessed the proper qualifications. There is nothing in the statute relative to the employment of teachers prescribing that the county superintendent is a party to said employment. The employment of teachers to teach in the various school districts is a matter within the discretion of the various school district boards. It is a matter of local

government which the patrons of the school district determine by the election of the members of their district board. The only restriction placed upon the district board is that no money be paid out to a teacher until the contract between the teacher and said board has been approved by the county superintendent. The limitation imposed in said statute is not a limitation upon the school district board employing a teacher or entering into a valid contract with said teacher, but the limitation goes to the fact of payment of salary due and nothing else.

The case of Means v. Vernon further holds that the approval or rejection of contracts between school district boards and teachers by the county superintendent is a judicial act and not a ministerial duty. This holding of the court does not seem to follow the former enunciations of this court; neither does it overrule the former holdings of this court.

In the case of School District No. 18 of Creek County v. Ferguson, 45 Okla. 680, 146 P. 711, this court had under consideration the question of the dismissal of a teacher by school district board and the county superintendent, and in passing upon said question the court held as follows:

"This section was construed perhaps for the first time in Oklahoma in the case of School District No. 94 in Grant County v. Nellie Gautier, 13 Okla. 194, 73 P. 954, wherein Chief Justice Burford, of the territorial Supreme Court, said:

" 'If the school board may then make a contract authorizing them to discharge a teacher for incompetency or other good cause, how is this power to be exercised? Certainly not arbitrarily, and for mere personal reasons. There must exist a substantial cause, and the school board must take some definite and affirmative action to ascertain the truth. It will not be enough to accept vague rumor and neighborhood gossip emanating from dissatisfied pupils. It is the duty of the school board to visit the school, examine into the conduct and management of the school, and after an impartial and considerate investigation, if they find that the teacher is not coming up to the requirements of the contract, then they may safely discharge the teacher when the contract so provides. But their action is not conclusive; they do not act judicially, and cannot; and the jury must be the final arbiter of the existence of the grounds for removal. * * *'

"Counsel for plaintiff in error endeavor to distinguish the case at bar from the case of School Dist. v. Gautier, supra, for the reason that as he says, in the latter case,

the teacher was discharged and dismissed by the district board alone, and that in the instant case the district acted in conjunction with the county superintendent; but we think there is no difference in principle. The district board alone, or acting in conjunction with the county superintendent, could not arbitrarily discharge a teacher; and when a teacher is arbitrarily discharged, or discharged at all, if it is claimed the same was wrongful, malicious, or arbitrary, then the teacher has a right to have a jury, or a court sitting as a jury, pass upon the question of the justice or injustice of such discharge."

In the authority just quoted, this court was dealing with the question of where the school district board and the county superintendent passed upon the question of whether or not a school teacher should be discharged under the provision of the law giving the school district board and the county superintendent authority to discharge a teacher upon certain grounds. This necessitated a hearing to determine whether or not the grounds existed justifying a dismissal of the teacher. In passing upon said matter this court approved the former holding of this court in School District No. 94, Grant County, v. Gautier, 13 Okla. 194, 73 P. 954, which case specifically held that such a hearing and decision by the school board and county superintendent was not judicial and was not final, but that the court was the final arbiter in said matter.

The reasoning of the court just set out in the School District No. 18 Case we consider sounder reasoning than that contained in the decision in the case of Means v. Vernon, and we are constrained to hold that the same is the more just and reasonable rule for this court to maintain.

We have gone very carefully into the cases of Means v. Vernon and Shoffner v. Smith in order to determine whether or not said cases correctly interpreted the rule of law therein announced. We have also cited other authorities of this court passing upon the question involved in the Means and the Shoffner Cases which do not hold the same view announced in the Means and Shoffner Cases. We have carefully considered the reasoning in both cases, and arrive at the conclusion that the case of Means v. Vernon and the case of Shoffner v. Smith do not correctly interpret the law in so far as they hold that the duty of the county superintendent in approving or rejecting a contract between a school district and teacher is a judicial act and that a county superintendent need not approve the contract unless he so

desires, and in so far as they so hold they are hereby overruled.

The case at bar furnishes an excellent illustration of the hardship that a county superintendent may bring upon any teacher whose contract he does not desire to approve. Plaintiff was a teacher of high standing, with excellent educational qualifications and 12 years of teaching experience. She entered into a good and valid contract with two members of the school district board, contracting to teach in said school district. The contract was presented to the county superintendent for his approval, and he refused to approve the same. He advised plaintiff that, since only two members of the board had approved her contract, he could not approve the same, but if she would procure the signatures of a majority of the voters in said school district petitioning her employment, that he would then approve said contract. Plaintiff procured the signatures of more than a majority of the legal voters of said district and presented said petition to the county superintendent, and he still refused to approve said contract on the theory that said contract was not a legal contract.

The county superintendent admitted that he did not consult his legal adviser, the county attorney, upon said matter. The county superintendent admitted that plaintiff was competent, was not cruel, that she was not negligent or immoral, which were the only grounds for which a teacher might be discharged. The county superintendent refused to approve the contract because he considered it an illegal contract, when in fact said contract was a good and valid contract.

The court, after hearing all of the evidence in said cause, found in favor of plaintiff and directed the county superintendent to approve said contract. The evidence is overwhelmingly in support of the findings rendered by the trial court. The decision of the trial court followed and correctly construed our statutory law pertaining to the subject under consideration.

We decline to follow the former decisions of this court in so far as they authorize the continuance and perpetuation of such gross injustice as the county superintendent sought to impose upon plaintiff in the case at bar, but follow the plain legislative intent of the statute enacted by the Legislature.

The judgment of the district court is in all things affirmed.

SWINDALL, McNEILL, OSBORN, and BUSBY, JJ., concur. ANDREWS, BAY-

LESS, and WELCH, JJ., absent. RILEY, C. J., dissents.