### FROST v. SCHOOL DIST. NO. 98, PAYNE CO.

No. 16456—Opinion Filed April 13, 1926.

Rehearing Denied May 18, 1926,

**1. Schools and School Districts—Validity of Teachers' Contract.**

The negotiations and writings signed between the parties to this action, as shown by the facts recited in the opinion, resulted in a valid teacher's contract with the plaintiff in error, pursuant to sections 10367, 10368, C. O. S. 1921.

**2. Judgment not Sustained.**

Record examined; held, to be insufficient to support a verdict for the defendant.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Payne County; Chas. C. Smith, Judge.

Action by E. M. Frost against School District No. 98 of Payne County for damages for breach of contract. Judgment for the defendant, and plaintiff brings error. Reversed.

Wilcox & Swank, for plaintiff in error

John P. Hickam and I. G. Lewis, for defendant in error.

Opinion by STEPHENSON, C. E. M. Frost commenced his action against school district No. 98 of Payne county for damages for breach of contract of employment, as superintendent of defendant's school. The trial of the cause resulted in an instructed verdict for the defendant. The plaintiff brings error, and assigns the action of the court in instructing a verdict for the defendant as error for reversal.

E. M. Frost acted as superintendent of the school for the defendant, for the school year 1922-23. A written form of contract was executed between the parties on the 18th day of May, 1923. The contract of employment was for the school year 1923-24, as superintendent, at a stipulated salary of $266.66 per month, or a total salary of $2,350, for nine months' employment. The plaintiff alleged and proved that the contract was signed in triplicate by the plaintiff, and on the part of the school officers, for the defendant. The plaintiff signed the form of oath prescribed by section 10368, supra, and further testified that it was understood that Walter Owen, the clerk, would take his acknowledgment thereto. The plaintiff further testified that the three copies of the contract were left with the members of the board, in order for the latter to submit the contract to the county superintendent for approval. It was contemplated that the plaintiff should commence his services for the defendant on September 4, following. The plaintiff attended summer school, and at the close of the term went away on a vacation. The plaintiff wrote a letter to the members of the school board on July 19th, relating to certain matters which should be attended to in relation to the coming school term. The plaintiff had no occasion to suspect that the board would not fill its contract for the coming school year, until he returned from his vacation. The plaintiff saw a notice in the local paper, about August 15th, to the effect that another person had been employed as school superintendent by the defendant, for the coming year. The plaintiff made inquiry of the members of the board about the con-

tract of employment with the plaintiff. The defendant school board did not give answers, which disclosed the exact intention of the defendant in this respect. The members of the school board informed the plaintiff that the contract had not been approved by the county superintendent. Thereupon, the plaintiff requested to be given a copy of the contract, so that it might be submitted to the county superintendent for approval. The request was denied, and the board also refused to furnish the plaintiff with a copy of the contract, as it was required to do by statute. The opening of school was continued from the 4th of September until about the 17th, on account of repairs then being made on the school building. The plaintiff held himself ready at all times to engage in the services of the defendant pursuant to the contract. The defendant refused the tendered services on the part of the plaintiff.

The county superintendent testified in the trial of this cause, in relation to the contract in question, as follows:

"Q. Examine plaintiff's exhibits 'A', 'B', and 'C', and state to the jury whether or not you ever saw those instruments before? A. Yes, sir, I have seen them before. Q. What was the occasion? A. One of the members of the school board brought them in to me, but I don't recall which member. Q. Of what school board? A. District No. 98. Q. And you don't know which one it was? A. No, sir. Q. Did you have any conversation with him that you remember of, relative to this contract? A. No. sir, I don't remember, I must have talked about them, but I don't remember anything about the conversation. Q. I will ask you whether or not you were requested to approve this contract? A. Well, I don't remember about that, either. Q. I will ask you if they had requested you to approve this contract, as county superintendent, whether or not would you approve it? A. As I remember, when we were talking about those contracts, I didn't say I wouldn't approve them, but I suggested that they be put on the regular state form. I don't see any reason why that contract wouldn't be regular and legal, since it is a contract between a teacher and school board, and it contains the things contained in the statutes. Q. (By the Court) That is the regular state form? A. Yes, sir that is right, this one is. Well it isn't the form. No, this is the city of Yale form, this isn't the state form. But it contains everything, there is one clause in there a little different, but I told Mr. Frost if he was willing to sign this kind of a contract, I didn't see why it wouldn't be legal. Q. (By Mr. Swank) And you were willing to approve it?

Did you refuse to approve it? A. I don't recall refusing to approve it, but I suggested it would be better to have it on the other form. Q. Would you have approved it if they had refused it? A. I believe I would."

The evidence discloses that a member of the school board submitted the contract, as executed by the parties, to the county superintendent, who, in substance, approved the form of contract. The defendant in error lays stress on the failure of the contract to show the officer's jurat to the form of oath which the plaintiff signed, and which was attached to the executed contract. The plaintiff showed a willingness to execute the form of oath required by the statutes by attaching his signature to the form of oath. The plaintiff testified that it was his understanding that the clerk of the school board would attach his jurat to the form after plaintiff signed the same. The plaintiff was denied possession of a copy of the contract, and did not learn, evidently, until the commencement of the action, that the jurat of the officer had not been attached to the form of oath.

Section 10368 was amended by House Bill No. 72, chapter 150, which carried the emergency clause and became effective March 9, 1923. A provision of the amendment provides that if the teacher should, by oversight or inadvertence, fail to make or file the oath, that he should be entitled to collect his or her salary upon filing with the county superintendent of the county, a duly executed form of oath. The record in this case shows that the plaintiff filed in the office of the county superintendent, a duly executed form of oath, when he discovered that the school clerk had not attached a proper jurat to the form of oath. The plaintiff met the existing requirement of the statutes in relation to the form of oath prescribed by the amendment to section 10-368, supra.

The uncontradicted evidence shows that the plaintiff was entitled to recover whatever damages he suffered from the breach of the contract. Stewart v. Board of Education, 104 Okla. 141, 230 Pac. 504; School Dist. No. 18, of Creek County v. Ferguson, 45 Okla. 680, 146 Pac. 711.

The cause is reversed and remanded for new trial, in accordance with the views expressed herein.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. p. 1097. (2) 4 C. J. p. 1164 § 3181.