## SMITH v. SCHOOL DIST. NO. 1, MARSHALL COUNTY.

No. 29184. April 30, 1940.

*102 P. 2d 131.*

Reuel W. Little, of Madill, for plaintiff in error.

Welch & Grigsby, of Madill, for defendant in error.

HURST, J. This action involves the validity of a teacher's contract entered into under the following circumstances: Mrs. Winston Smith was a teacher in school district No. 1, in Marshall county, during the school year 1936-1937. In March, 1937, the principal of the school, acting under the authority of the school board, presented Mrs. Smith a form of contract to be executed for the term of school to begin September 6, 1937, stating that she was to be paid the largest amount that could be paid under the state aid rule, which he estimated would be $85 to $90 per month.

The date of the contract was purposely left blank to be inserted after July 1st, and the form was to be signed by the school board and approved by the county superintendent when the amount of salary allowable under the state aid rule could be determined. The county superintendent testified that the amount of state aid could not be determined until the budget had been made out, after July 1st.

The forms were signed by two members of the board probably before July 1st. Mr. Coe, who was a member of the board during the time of the negotiations, testified he and Mr. Dunning, another member, had signed the contract when he last saw it. The instrument bears the signature of the third member, the newly elected clerk. The time the latter signed the instrument does not appear. Mr. Coe testified further that the principal had authority to act for the board in the matter of teachers' contracts. It may reasonably be inferred, therefore, that the copies of the contract before reaching the county superintendent's office were last in possession of either the clerk of the board or the principal. The copies were found by the newly elected county superintendent in a box in his office sometime after July 5th, along with a number of other teachers' contracts left for his approval. Mr. Coe testified also that the board had agreed that Mrs. Smith was to receive the largest amount of salary allowed under the state aid law. When the new county superintendent examined these instruments, along with other contracts, he dated them as of July 6, 1937, and on July 9, 1937, approved them, at the same time completing the jurat to the oath required of the teacher. The amount of salary was filled in later in July by Mr. Smith and Mrs. Smith's counsel, in the presence of the county superintendent after he had stated the amount for which Mrs. Smith would qualify under the state aid law.

The board, after the approval of Mrs. Smith's contract, made a contract with another teacher, replacing Mrs. Smith, and this contract was approved by the county superintendent. A week after Mrs. Smith presented herself to teach, she was advised that the board desired this other teacher in her place. After attempts to obtain other employment, she brought this action, alleging her contract was valid and that she was at all times able, willing, and ready to perform. The trial court sustained a demurrer to her evidence, and she appeals.

Her qualifications are not in issue here. The only question presented is the validity of the contract. It is contended by the defendant in error, the school district, that the contract was completely executed and delivered before July 1, 1937, and, therefore, is void under the decisions of this court in Brians v. Consolidated School District, 183 Okla. 29, 79 P. 2d 798, and Dungan v. Independent School District No. 39 of Gage, Ellis County, 182 Okla. 385, 77 P. 2d 1117. The plaintiff in error relies chiefly upon the case of Anderson v. Miller, 172 Okla. 480, 45 P. 2d 499, and the general rules relating to contracts therein considered. Other cases cited were decided prior to the effective date of section 6814, O. S. 1931, 70 O. S. A. § 117, which is invoked by the school district as barring recovery.

The section just cited provides that the district board shall enter into written contracts with teachers for the fiscal year, but that the board shall not have authority to enter into contracts until after the beginning of the fiscal year for

which the contract is made. It contains a further provision that there shall be no authority to pay the teacher, except for services rendered under a valid written contract approved by the county superintendent. The underlying question, therefore, decisive of this case, is whether the contract involved herein was "entered into" before or after the beginning of the fiscal year. The question of ratification is not before us.

It was held for a long time that contracts could be executed at or after the spring school meeting for services to be performed during the next succeeding school term, but later cases held the statute permitting such contracts invalid, as violative of section 26, art. 10, of the Constitution, and held that such contracts must be executed after the beginning of the fiscal year in which they were to be performed. Some of these cases will be hereinafter cited. Following these cases came the enactment of the section here under consideration. And in the Brians Case, supra, it was held in effect that decisions prior to the effective date of the act were not controlling; but there are certain features of the act that should be construed in reference to these prior decisions.

The part that the county superintendent plays in the execution of the contract has been a matter of controversy, resulting in some conflicting and irreconcilable opinions. A brief reference to some of the cases will show the conflict and the difficulty of arriving at the true meaning of the decisions. The 1931 act contains the identical provisions of the 1913 law insofar as it provides for a written contract with teachers and requires the approval of the county superintendent before any payments can be made. The change was made in the last half of the section as to the time of entering into the contract. In this respect, however, the law merely adopted the holding of this court as expressed in numerous decisions, such as School District No. 76, Creek County, v. Bath, 120 Okla. 204, 250 P. 1003. The re-enactment of the matters contained in the first paragraph of the section, of course, is presumed to have been made with the construction placed thereon by this court. We should, therefore, determine if possible what that construction had been. The decisions, both before and after the 1931 act became effective, in some instances apparently attempt to make a distinction which does not exist.

One of the earlier cases is Means, Supt., v. Vernon, 108 Okla. 123, 235 P. 163, which held the approval by the county superintendent essential to the validity of the contract. It also held the approval a judicial or quasi-judicial act. This case was followed in Shoffner v. Smith, 155 Okla. 43, 7 P. 2d 655. But between these two cases in point of time we find Frost v. School District No. 98, Payne County, 118 Okla. 57, 246 P. 432, and Board of Education v. Barrow, 139 Okla. 109, 281 P. 218. In the former the court held a teacher's contract valid, although never approved by the county superintendent. In the latter this court, without referring to the Frost Case, held that without the approval of the county superintendent a teacher's contract was invalid, citing the Means Case, supra. The Frost Case, however, later was cited with approval, and the cases of Means v. Vernon and Shoffner v. Smith were overruled insofar as they held that the approval of the county superintendent was a judicial act to be exercised in his discretion. Shofner v. Mercer, 164 Okla. 170, 23 P. 2d 623. This latter case was followed in Johnson v. Brown, 180 Okla. 148, 68 P. 2d 855, where the county superintendent was required by mandamus to approve a contract. It is apparent, therefore, from this case and the case it follows, also a case in mandamus, that it is not true that the county superintendent has no part to play in giving effect to a contract. Since it appeared to the court that mandamus should issue, it is clear that the approval of the county superintendent is a necessary act, for mandamus will not issue to compel a useless act. Jones v. Sneed, 101 Okla. 295, 225 P. 700; State ex rel. West v. McCafferty, 25 Okla. 2, 105 P. 992, L. R. A. 1915A, 639.

The act also provides that a school teacher is so bound by her contract that she cannot without consent enter into any other contract to teach in this state during the same period of time. The obligation should lie on the board and superintendent not to contract with another to replace the teacher over her objection after contract has been legally approved. In the Barrow Case, supra, it was said that one of the purposes of requiring the superintendent's approval was to prevent a duplication of contracts.

Furthermore, the court in the case of Shofner v. Mercer, supra, stated that the limitation imposed by statute is that no money can be paid out for salary until the contract has been approved by the county superintendent. It is clear, therefore, that no enforceable right exists until this approval is had. The teacher cannot collect salary, and certainly the board cannot compel the performance by the teacher without pay. This, of course, is tantamount to saying that the so-called contract is unenforceable without the approval of the county superintendent. And to say this is to say that no valid contract exists until the county superintendent approves it, for contracts are not contracts unless they are enforceable. Clark v. Grand Lodge, B. R. T., 328 Mo. 1084, 43 S. W. 2d 404, 88 A.L.R. 150; State v. Lehman, 100 Fla. 1313, 131 So. 533; United Transp. & Lighterage Co. v. New York & Baltimore Transp. Line (D. C. N. Y.) 180 Fed 902, aff. 185 Fed. 386, 107 C.C.A. 442. However little or great may be the discretion which the county superintendent may exercise, it is clear that the negotiations do not ripen into a completed agreement until he approves, since not until then is the contract enforceable.

Were it not for section 26, art. 10, of the Constitution and statutes enacted pursuant thereto, the county superintendent's approval could be given at any time; but in compliance with that provision of the Constitution the approval must be given at a time when the superintendent may lawfully act, that is, within the fiscal year contemplated by the terms of the proposed contract. See Gentis v. Hunt, 121 Okla. 71, 247 P. 358; School District No. 76 v. Bath, 120 Okla. 204, 250 P. 1003. In these cases it is held that contracts executed before July 1st are void, if the salary is to be paid out of funds appropriated for the ensuing fiscal year. The court evidently used the word "execute" in its ordinary legal meaning, including delivery, and implying a complete contract. Words and Phrases (1st Series) vol. 3, p. 2558.

The contract involved in the case of Brians v. Consolidated School District, supra, was executed and approved on June 3rd, prior to the beginning of the fiscal year. All parties had done everything required to complete the instrument prior to July 1st. In the case of Anderson v. Miller, supra, however, some of the acts towards making a complete instrument were done before July 1st, and the other acts were performed afterwards. It was there held that it was more in keeping with the facts pleaded and the law of contracts generally to hold that the signing of the printed forms by the teachers, and the transactions had before July 1st, were not contracts, but were tenders of a willingness to contract. It was there said also that the plaintiff at all times during the trial of the cause refused to be placed in the position of treating the things which transpired prior to July 1st as being the contract. Here the plaintiff assumed a similar attitude, and here the same general rules as to contracts and the same general rules as to inferences to be drawn as against a demurrer should be applied.

We should not construe the statute to prevent all negotiations between school boards and teachers before July 1st preceding the school year. There is no good reason why tentative negotiations cannot be entered into, provided there is no intent to violate the law. Here the evidence shows that the signing by the teacher was tentative, conditioned upon the board's acting or authorizing the final execution of the proposals after the beginning of the fiscal year and also conditioned upon the approval of the county superintendent after July 1st, and the

determination of the amount of the state aid then available. It is a fair inference also that the school board's action was conditioned upon these future events. The negotiations could not become a contract until these acts were consummated. See Rutherford v. Holbert, 42 Okla. 735, 142 P. 1099, L.R.A. 1915B, 221.

In view of the understanding that the amount of salary was to be determined by the amount of state aid to be filled in later, and that the amount and contract were to be subject to the approval of the county superintendent, it is evident that there was sufficient authority implied to fill in the blanks, under the rule that where blanks are left in an instrument there is implied authority given to the person to whom the instrument is entrusted to fill in the blanks in accordance with the agreement of the parties. Perry v. Jenkins Music Co., 182 Okla. 51, 75 P. 2d 1147; 3 C. J. S. 976; 17 C. J. S. 416.

The exact time that the instruments were delivered to the county superintendent's office is not shown. Since the presumption favors the legality of the approval of the contract, it will be presumed that the board, through its clerk or superintendent, one of whom last theretofore must have had possession of the incompleted copies, legally delivered them at a lawful time to the county superintendent for completion and approval as contemplated by the parties. When an act is done which could not rightfully or legally be done unless those other things which usually or legally precede it are also done, the presumption is that such antecedent things have also been done. Hartwell v. Parks, 240 Mo. 537, 144 S. W. 793.

There is no evidence here that the school board at any time before the county superintendent acted, or at any time before the appropriation was made, repudiated the contract, or withdrew its offer. The teacher appeared at the appointed time to teach, was assigned some work to do and was ready to begin her duties. She was not advised until a week later that another would take her place.

Although previously, near the end of July, she had told a board member that she would resign, she had promptly withdrawn that offer. The board, as one of its defenses, alleges that she tendered her resignation in August, and that it had been accepted. Some inference can be drawn therefrom that both she and the board recognized that she had something from which to resign, that is, from a contract to teach. From all these facts it may reasonably be inferred that the board had after July 1st recognized her rights.

In a variety of cases involving school districts and municipal corporations of various kinds we have been called upon to apply the provisions of section 26, art. 10, and we have repeatedly held that contracts, executed or executory, entered into in one fiscal year which in any way seek to bind the revenues of a succeeding fiscal year are void. See the following cases and the many cases cited or discussed therein: Campbell v. State, 23 Okla. 109, 99 P. 778; O'Neil Engineering Co. v. Incorporated Town of Ryan et al., 32 Okla. 738, 124 P. 19; Boardman Co. v. Board of County Commissioners, 136 Okla. 85, 276 P. 474; Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15; School District No. 76, Creek County, v. Bath, 120 Okla. 204, 250 P. 1003; Dungan v. Independent School District No. 39 of Gage, 182 Okla. 385, 77 P. 2d 1117; Herd Equipment Co. v. Eagle Township, 180 Okla. 172, 68 P. 2d 420. The fundamental proposition involved in these cases is stated in the case of Boardman Co. v. Board of County Commissioners, supra:

"Our first inquiry, therefore, is: When was this contract made, and the obligation (if legal) incurred?"

The cases therefore are not contrary to the decision here; but the question considered here is the same. And since there was sufficient evidence to show a valid written teacher's contract, entered into after the beginning of the fiscal year, the court erred in sustaining the demurrer to plaintiff's evidence.

The judgment accordingly is reversed, with directions to grant a new trial.

BAYLESS, C. J., and RILEY, OSBORN, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and CORN and GIBSON, JJ., absent.