RIEGEL, d. b. a. TEACHERS PLACEMENT SERVICE, Plaintiff, v. HOLMES, Defendant.

Common Pleas Court, Clinton County.

No. 18509. Decided December 31, 1960.

*Mr. Max H. Dennis* and *Mr. Joe F. Asher,* for plaintiff.
*Mr. Charles E. Hart, Jr.,* for defendant.

For further history see *Omnibus Index* in bound volume.

Swaim, J. Plaintiff filed Motion to set Aside Judgment and for a New Trial, after Finding and Judgment for the Defendant, in suit to recover money only for alleged commission for alleged service in procuring a teachers position contract for defendant. The evidence showed:

Plaintiff operates a Teacher Placement Service and defendant was and is a school teacher, who, at the time of the contract herein, was teaching in Carroll High School, Carroll, Ohio. Defendant, who had Ohio Life High School, and Elementary School Teachers Certificate, desiring a different position, on December 12, 1953, signed a contract with plaintiff, for plaintiff to use his efforts to obtain a different teaching position for defendant. The pertinent part of this contract relates:

* * * the Teachers Placement Service shall give notice to the undersigned teacher of available teaching positions for which said teacher is qualified and such other information as is necessary to enable said teacher to make proper application for such position—Teachers Placement Service shall present to the board of education of the position to be filled either directly or through the superintendent of schools credentials as to the training and experience of said teacher.

IN CONSIDERATION WHEREOF, said teacher shall pay to said Teachers Placement Service five per cent (5%) of the salary for the first full year of employment, if said

teacher is employed by said board and accepts said position. * * *

It is hereby mutually agreed that this commission is due and payable when said position is secured, but may be paid in three (3) equal installments * * *

Plaintiff's service found a vacancy in the elementary schools at Barberton, Ohio, notified defendant of the same, and apparently both plaintiff and defendant contacted the Barberton School Board.

The minutes of the Barberton City Board of Education, at regular meeting of May 11, 1954, show the following, among other things:

Motion by Yoder and seconded by LaPorte to employ the following new teachers for the school year 1954-55 on 1-year contracts according to salary schedule * * *

* * * 4,925.00

Ayes 5, Davis, LaPorte, Latham, Hecker and Yoder.

MOTION CARRIED.

The testimony of plaintiff did not show a written contract was entered into between the Board of Education and the defendant. (The testimony of defendant was that no written contract was ever entered into between the Barberton Board of Education and himself.)

Under date of August 4, 1954, the defendant, Paul L. Holmes, wrote a letter to Mr. P. G. Gunnett, Superintendent, Barberton Schools, Barberton, Ohio, and stated:

Two factors have developed to make it to my advantage to remain at Carroll next year.

First, I have been offered $4,800.00 a year to remain at Carroll. After persistent search, I am convinced that it is improbable for me to make a trade or a deed for a place to live near Barberton, that will be agreeable to my family.

In view of these facts, I ask to be released from my contract with Barberton Schools to accept the new contract at Carroll.

The minutes of the Barberton City Board of Education, at adjourned meeting held August 31, 1954, show the following, among other things:

MOTION by Yoder and seconded by Davis to accept the

resignation for the 1954-55 school year of Paul L. Holmes as a teacher in the Barberton Public Schools.

*Motion Carried.*

The plaintiff claimed $245.00 as agreed commission for the alleged service relating to this alleged contract of defendant with the Barberton City Board of Education, and upon refusal of defendant to pay this amount, plaintiff brought suit for this amount in this Court, while it still had jurisdiction of cases of $100.00, instead of over $300.00, as at present. The parties waived jury, tried the same to the Court, and the pertinent parts of the evidence is set forth above; memo, briefs were filed by the attorneys.

In a memo. opinion, this Court stated as follows:

—under the present Ohio law as to Teachers Contracts, there must be a valid contract in writing entered into between the Board of Education and the teacher, before it can be stated that "said teacher is employed by said board and accepts said position." The law has changed so much from the old employment of teachers statutes, that mere notations upon the minutes cannot be satisfactory any longer, as to the employment of teachers.

It was incumbent upon the plaintiff as part of his case to prove a valid contract in *writing* between the Board of Education and the defendant, Paul Lemert Holmes, binding upon both parties, before there could be any recovery upon plaintiff's contract, introduced in evidence as Plaintiff's Exhibit No. 1. No such contract being introduced in evidence, the plaintiff has failed in his proof.

Judgment for the defendant, at costs of plaintiff.

Based upon this memo. opinion, judgment for the defendant was duly entered in this case, exceptions saved to plaintiff. Plaintiff filed Motion to Set Aside Judgment and for a New Trial within statutory time; this opinion is upon that Motion.

\*　　　\*　　　\*　　　\*

Prior to 1941, various provisions, repealed that year, regulated the employment of teachers. In City School Districts, they were appointed by the superintendent, "subject to the approval and confirmation of the board" (Section 7703, General Code), for a period of not more than four years (Section 7691, General Code), while in Village and Rural School Dis-

tricts, they were employed by the Board of Education for a period of not more than three years (Section 7705, General Code).

Under the general laws regulating Boards of Education, we found Section 4752, General Code, which, before 1910, was Section 3982, Revised Statutes, which said:

Upon a motion to adopt a resolution * * * to employ a superintendent or teacher * * * the clerk of the board shall publicly call the roll of the members composing the board and enter on the records the names of those voting "aye" and the names of those voting "no," if a majority of all the members of the board vote "aye," the president shall declare the motion carried.

These and similar preceding sections had been before the Courts of Ohio many times; the method of appointing or electing a teacher was well known; no contract in writing was required, merely the various acts of the superintendent and board, or of the board. But the court did require strict compliance with the entering of the vote upon the minutes:

Where the minute book * * * shows * * * that a motion to proceed with the election of teachers was carried by a unanimous vote, and that an applicant for the position of teacher was declared elected by a unanimous vote, but the clerk did not call the roll of the members, and the names of those voting aye were not entered on the record, the requirement of the statute was not sufficiently complied with, and the election was invalid. *Board of Education* v. *Best*, 52 Ohio St., 138, 39 N. E., 694, 27 L. R. A., 77; 33 Weekly Law Bulletin, from 2nd paragraph of syllabus (Decided 12/11/1894).

Where the minutes of the Board of Education in regard to the election of a teacher, show the aye and nay vote, and how each member voted, but do not expressly state that the roll was called, this is a substantial compliance with the requirements. *Youmans et al* v. *Board of Education*, 13 Ohio Circuit Court Reports, 207. 7 Ohio Circuit Decisions, 269 (Decided 1896).

In order to constitute a legal employment of a teacher, within a township by the board—, its record must show that a majority of all the members of the board voted "aye" on

that proposition. —Where a * * * board consisted of its clerk and five directors, a motion to confirm the election of a teacher, which had the votes of but two directors and the clerk, does not have the number necessary to carry it and such election is not confirmed. *Rush* v. *Board of Education*, 20 Ohio Circuit Court Reports, 361, 11 Ohio Circuit Decisions, 183 (Decided 1899).

There is no question but that that system of short contracts and having to depend entirely upon the minutes of a Board of Education with the continual question: "Did the Board follow the statute?", was not very satisfactory. The Ohio Teachers' Tenure Act, of 1941, was undoubtedly of great benefit to thousands of capable and devoted teachers, in providing them with much needed security. The General Assembly provided how continuing contracts and limited contracts were to be given, and also as to show those who did not prove to be competent were to be dismissed.

This Act (119 Ohio Laws, 451) was signed by the Governor on June 2, 1941, and became effective September 1, 1941, and was given the numbers of Sections 7690-1 to 7690-8, inclusive, General Code, which numbers were changed to Sections 4842-6 to 4842-13, General Code, in the Recodification of all School Laws in 1943, 120 Ohio Laws, 475, effective September 16, 1943.

In the general 1953 revision of all Ohio laws, effective October 1, 1953, this Teachers' Tenure Act, with the various changes and additions, became Sections 3319.08 to 3319.18, inclusive, Revised Code, which numbers it still has.

In the enactment of the 1953 Revised Code, there was left out the "first provise," which was the third paragraph (which was then obsolete), of original Section 7690-2, General Code, later Section 4842-8, General Code (now Section 3319.11, Revised Code), which first provise and third paragraph had read as follows:

Provided, however, that on or before September 1, 1941, a contract shall be entered into by each board of education with each teacher holding a professional, permanent or life certificate, who, at the time of the passage of this act, is completing five or more consecutive years of employment by said board.

The contract in this case was signed December 12, 1953,

shortly after the effective date of the Revised Code, so the Teachers' Tenure Act, as found therein control the question of the employment or non-employment of the Defendant herein by the Barberton Board of Education, and therefore bears directly upon the right of the Plaintiff to recover or not to recover, in this action.

It is therefore important to examine these sections, and to fully set out the pertinent parts of the law, to show the intent of the General Assembly, and to quote some sections that are not applicable to the particular question here of contract or non-contract. The italics are those of this Court to emphasive certain wording, and such emphasis is not found in the statutes.

Section 3319.08, Revised Code. *Contracts for employment of teachers. The board of education of each* city, exempted village, and local *school district shall enter into contracts for the employment of all teachers* and shall fix their salaries which may be increased but not diminished during *the term for which the contract is made*, except as provided * * *. Such boards may include in such *contracts* duties beyond the regular duties and for such additional duties the salary of the teacher may be supplemented. * * *

*Contracts for the employment of teachers* shall be of two types, *limited contracts and continuing contracts. A limited contract is a contract*—for all other teachers for a term *not to exceed five years. A continuing contract is a contract which shall remain in effect* until the teacher resigns, elects to retire, or is retired—or until it is terminated or suspended, and shall be granted only to teachers holding professional, permanent or life certificates.

Section 3319.09, Revised Code. Definitions. As used—(A) Teacher means all persons certified to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the employing board requires certification, * * * (C) "Continuing service status" for a teacher means *employment under a continuing contract*.

Section 3319.11, Revised Code. Continuing service; qualifications for continuing contracts; limited contract. Teachers eligible for continuing service status in any school district shall be those teachers, qualified as to certification, who within the

last five years have taught for at least three years in the district, and those teachers, who, having attained continuing contract status elsewhere, have served two years in the district, * * *

Upon the recommendation of the superintendent that a teacher eligible for a continuing service status be re-employed, a *continuing contract shall be entered into between the board and such teacher,* unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing service status has not previously been attained elsewhere, under a limited contract for not to exceed two years.

*A limited contract may be entered into by each board with each teacher* who has not been in the employ of the board for at least three years, and *shall be entered into,* regardless of length of previous employment, *with each teacher employed by the board who,* holds a provisional or temporary certificate.

*Any teacher employed under a limited contract is,* at the expiration of such limited contract, *deemed re-employed* at the same salary plus any increment provided by the salary schedule *unless the employing board gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April or thirty days prior to the termination of such teacher's school year,* whichever date occurs the earlier. *Such teacher is presumed to have accepted such employment unless he notifies the board in writing, to the contrary on or before the first day of June, and a contract for the succeeding school year shall be executed accordingly.*

\*      \*      \*      \*

(NOTE: There was a slight change in this section in 128 Ohio Laws, 123, effective November 9, 1959, but the quoted parts were not changed.)

Section 3319.12, Revised Code. Annual notice of salary to be paid teacher; transfer to other positions. *Each board of education shall cause notice to be given annually* not later than the first day of July *to each teacher who holds a contract valid for the succeeding school year,* as to the salary to be paid such teacher during such year. Such salary shall not be lower than

the salary paid during the preceding school year, unless such reduction is a uniform plan affecting the entire district * * *

Section 3319.15, Revised Code. Termination of contract by teacher. *No teacher shall terminate his contract after the tenth day of July of any school year,* or during the school year, prior to the termination of the annual session *without the consent of the board of education, and such teacher may terminate his contract* at any other time by giving five days' written notice to the employing board.

\* \* * *

Section 3319.16, Revised Code. Termination of contract by board of education. *The contract of a teacher may not be terminated except for* gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; and for other good and just cause. *Before terminating any contract, the employing board shall furnish the teacher with a written notice* signed by its clerk of its intention to consider the termination of his contract with full specifications of the grounds for such consideration. * * * After hearing, *the board by a majority vote, may enter upon its minutes an order of termination. Any teacher affected by an order of termination of contract may appeal* to the court of common pleas of the county in which the school is located within thirty days after receipt of notice of the entry of such order. * * *

There are many decisions of the Supreme Court and of the several Courts of Appeals interpreting the provisions of this act, and there is nothing doubtful, uncertain, or ambiguous about them. In the first case decided after the passage of the Act, the Supreme Court, in deciding several cases in one opinion, and granting or directing writs of mandamus against the several Boards of Education to "enter into continuing contract" or to "tender a continuing contract," states in the syllabus (the syllabus being the law of the case, in Ohio, since January, 1858, 14 Ohio State Reports vii, Rule vi):

1. Under the first provise of Section 7690-2, General Code (119 Ohio Laws, 451), a part of the Ohio Teachers' Tenure Act, a teacher in the public schools holding a professional, permanent or life certificate who was completing five or more consecutive years with any board of education at the time of the

passage of the act, was entitled to the tender of a continuing contract of employment by such board on September 1, 1941, or within a reasonable time thereafter. *State, ex rel. Bishop, v. Board of Education of Mt. Orab Village School District, and other cases,* 139 Ohio St., 427, 40 N. E. (2nd), 913, 22 Ohio Opinions, 489, decided March 25, 1942.

This Section 7690-2, General Code, was later Section 4842-8, General Code, is now Section 3319.11, Revised Code, and the "first proviso" referred to is the third paragraph of this section, supra, which was omitted in the 1953 Revised Code of Ohio.

The law and rule as set down in this Paragraph 1, of the syllabus in the above case, is followed and again set forth in the syllabus of another case, the same year: *State, ex rel. Thurston, v. Board of Edn. of Wheelersburg Rural School District,* 140 Ohio St., 512, 45 N. E. (2d), 604, 24 Ohio Opinions, 529, decided December 16, 1942.

In another case, very soon thereafter, the specific question related to the termination of a continuing contract, and the facts there show that the relatrix was granted a preemptory writ of mandamus for the granting of a continuing contract against the respondent Board, in the Court of Common Pleas, and "on June 1, 1942, such a contract was entered into as of September 2, 1941"; this case being *State, ex rel. Weekley, v. Board of Education of City School District of City of Youngstown,* 141 Ohio St., 260, 47 N. E. (2d), 776, 25 Ohio Opinions, 393, decided March 24, 1943.

In *State, ex rel. Rose, v. Board of Education of Ohio Rural School District, and other cases,* 74 Ohio App., 63, 57 N. E. (2d), 609, 29 Ohio Opinions, 104, decided March 6, 1944, the Court of Appeals of Gallia County decided five original actions in mandamus, allowing the writs of mandamus in favor of the teachers and against the boards of education, for the boards to "tender and execute the type of contract to which they claim to be entitled under the Ohio Teachers' Tenure Act." In this case, the Court discusses the several situations involved and also the Act.

Certainly after the case of *Poehls* v. *Young et al, Board of Education of City of Youngstown, Ohio, and another case,* 144

Ohio St., 604, 60 N. E. (2d), 316, 30 Ohio Opinions, 223, decided March 21, 1945, there could be no doubt that the Boards *must* act under this Teachers' Tenure Act in the employment of teachers.

The Plaintiff, Poehls, on June 27, 1942, filed action in mandamus against the Board praying that the board be required to tender her a continuing contract and to re-employ her as teacher, which writ was granted in December, 1942, which judgment became final, and not being re-employed, she filed suit for amount due her for salary. The Supreme Court again restated the law as to the continuing contract provision, and said in second paragraph of syllabus:

2. Where a board of education failed and refused to enter into a continuing contract with a teacher possessing the qualifications prescribed by Section 7680-2, General Code, and further failed and refused to assign such teacher a place to teach, thereby depriving the teacher of employment during the school year 1941-1942, the board of education is liable for the amount of salary the teacher would have received for that year had the board complied with the provisions of the statute.

The law as interpreted in this case is followed in another case against the same board: *Roller* v. *Patrick et al, Board of Education of City of Youngstown*, 145 Ohio St., 572, 62 N. E. (2d), 367, 31 Ohio Opinions, 208, decided August 8, 1945, where the board failed to comply with the writ of mandamus to enter into the continuing contract and the teacher sued for the salary that she would have received for two school years, and the Supreme Court in that case, says:

3. On the undisputed facts as stated plaintiff is entitled to recover the salary that would have been due and payable had the continuing contract been entered into as required by statute. (*James* v. *Allen County*, 44 Ohio St., 226, distinguished).

and on page 576, the Court says as to this *James* v. *Allen County* case:

In that case, the rights were determined according to the principles of the common law. In the instant case, the rights of the parties must be determined according to the provisions of the Teachers' Tenure Act, Section 7690-1, et seq. (119 Ohio Laws, 451), now Section 4842-7, et seq., General Code (120 Ohio Laws, 540).

To the same general effect, also: *Garrison* v. *Patrick et al, Board of Education of City of Youngstown,* 145 Ohio St., 580, 62 N. E. (2d), 371, 31 Ohio Opinions, 211, decided August 8, 1945.

All of the above cases in one way or another have involved the "continuing contract" provise of the Teachers' Tenure Act, but we now find another part of the Act interpreted. This case is *State, ex rel. Rutherford,* v. *Barberton Board of Education,* 148 Ohio St., 242, 74 N. E. (2d), 246, 35 Ohio Opinions, 222, decided July 2, 1947, which affirmed the Court of Appeals. Enough will be quoted, together with the second paragraph of the syllabus to show the law point:

This is an action in mandamus originally filed in the Court of Appeals—to compel the respondent board to tender the relator a "limited" contract to teach in the Barberton schools for the school year 1946-1947. * * * that court found in favor of the relator and issued a pre-emptory writ of mandamus as prayed for.

2. A teacher employed under a limited contract shall automatically be deemed re-employed for the ensuing school year, where this board of education has failed to give him on or before the 31st day of March in the year of his employment a written notice of its intention to not re-employ him for the succeeding school year, as permitted by Section 4842-8, General Code, which notice was authorized by a resolution expressing a determination of such intention.

Another Supreme Court case, relating to "limited contract" is *State, ex rel. Foster,* v. *Madison Township Board of Education,* 151 Ohio St., 413, 86 N. E. (2d), 598, 39 Ohio Opinions, 248, decided May 25, 1949. In affirming the Court of Appeals which granted a writ of mandamus "requiring the respondent board * * * to execute a contract in writing whereby the relator would be re-employed as a teacher—for a period of five years as provided in Section 4842-8, General Code," the Supreme Court in first paragraph of syllabus, said:

1. Under the provisions of Section 4842-8, General Code, any teacher employed under a limited contract shall at the expiration of such limited contract be deemed re-employed unless the employing board of education shall give such teacher

written notice on or before the thirty-first day of March of its intention not to re-employ him.

We find the procedure of a Board of Education as to such contracts set out in *State, ex rel. Van Ausdale, v. Board of Education of Monclova Local School District,* 88 Ohio App., 175, 95 N. E. (2d), 590, 44 Ohio Opinions, 193, 58 Ohio Law Abstract, 123, decided December 5, 1949.

Following these cases in point of time, we find the case of *Jacot v. Secrest et al, Board of Education of City of Warren,* 153 Ohio St., 553, 93 N. E. (2d), 1, 42 Ohio Opinions, 31, decided May 31, 1950, where the teacher had had a limited contract with the board, and there was involved interpretation of Section 4842-8, General Code, the pertinent part of which then read:

Any teacher employed under a limited contract and ineligible for a continuing contract shall at the expiration of such limited contract be deemed re-employed—for the succeeding school year at the same salary plus any increment provided—unless the employing board shall give such teacher written notice on or before the thirty-first (31st) day of March of its intention not to re-employ him. Such teacher shall be presumed to have accepted such employment unless he shall notify the board of education in writing to the contrary on or before the first day of June and a contract for succeeding school year executed accordingly.

In the opinion by Judge Stewart in this case, the Supreme Court says on pages 557-558: (italics or emphasis by this Court, not found in the reported case).

No notice was given plaintiff by the board pursuant to Section 4842-8, General Code, on or prior to March 31, 1946, and when that day had passed plaintiff was deemed re-employed under the statute. However, it is axiomatic that in order to have a valid contract of employment or re-employment, there must be not only a proffer of employment by the employer, but there must be the assent of the employee. Section 4842-8, General Code, provides that a teacher shall be presumed to have accepted re-employment becoming effective after March 31, unless he shall notify the board of education in writing to the contrary on or before the first day of June, and a con-

tract for the succeeding school year shall be executed accordingly. Plaintiff therefore had until the end of June 1 to signify that he did not assent to re-employment and his assent became effective and conclusive only at the the end of June 1. The fact that no completed contract of employment was effected until June 1st is strengthened by *the provision in the statute for the execution of a written contract after such date. If nothing had intervened between March 31 and the end of June 1, plaintiff would have been entitled to a written contract with the board to teach* for the school year 1946-47, but a fatal event did intervene.

In May 1946, the board formally and legally gave its consent to the State Teachers' Retirement System to the retirement of the plaintiff on August 31, 1946, the end of the 45-46 school year, and as a result the retirement system was required to retire plaintiff as of August 31, 1946, and it did so. Therefore, when plaintiff presented himself to the superintendent in September 1946, and requested a teaching position, he was rightfully refused for the reasons that he had been legally retired.

Section 4842-8, General Code, provides that a teacher's limited contract will be renewed if the board of education does not notify the teacher in writing prior to March 31 of any year of its intention not to re-employ him, and if such teacher does not notify the board of education on or prior to June 1st of his intention not to accept the employment. *Ordinarily, such a procedure results in the obligation upon the part of the board of education to enter into a written contract with the teacher for the ensuing school year.*

It will be noted that the Supreme Court when interpreting the words: "a contract for succeeding school year executed accordingly," definitely says that the same is "a written contract" in two different places.

Can there be any doubt that when the General Assembly through this whole law mentions "contract" it means what the Supreme Court held in this case, "a written contract"? The phraseology is so definite throughout the whole Teachers' Tenure Act that it is difficult to see how anyone could think differently, at any time, whether the contracts were "continu-

ing contracts" or "limited contract," or renewal of a "limited contract."

This Section 4842-8, was changed in 124 Ohio Laws, 161, effective August 24, 1951, this part relating to notice from the board, from

"written notice on or before the thirty-first day of March of its intention not to re-employ him"

to the following:

"written notice of its intention not to re-employ him or her on or before the thirtieth day of April or thirty days prior to the termination of such teacher's school year, whichever date occurs the earlier."

In the enactment of the Revised Statutes, effective October 1, 1953, there was a slight change in the wording, but which however did not change any pertinent part of this part of the new section, which then became Section 3319.11, Revised Code.

From this Clinton County, there was a Court of Appeals case interpreting the written contract between the teacher, who was also a school head, and the Board, which case is *State, ex rel. Freshcorn,* v. *Board of Education of Blanchester Local School District,* 89 Ohio App., 196, 101 N. E. (2d), 137, 45 Ohio Opinions, 441, decided May 28, 1951.

From these many opinions, including the one concerning the Barberton Board of Education itself (the board in the instant case), the law by 1953 was well established as to the interpretations of the Teachers' Tenure Act. There could be no doubt that at the time of the contract between plaintiff and defendant herein, on December 12, 1953, and also at the time of the purported hiring herein, of defendant by the Barberton Board of Education, on May 11, 1954, the law and the cases interpreting the law, were that between any teacher holding at least a provisional or temporary certificate and the board of education, there must be a *written contract,* and that the old custom of just a resolution by the board, as was legal prior to 1941, was not then law. This written contract provision was the law then, and at the time of trial herein, and at present time.

Subsequent to the facts in this case, there has been another case in the Supreme Court involving the Teachers' Tenure Act,

which is *State, ex rel. Farley,* v. *Board of Education of Euclid City School District,* 169 Ohio St., 388, 159 N. E. (2d), 747, 8 Ohio Opinions (2d), 417, 82 Ohio Law Abstract, 392, decided July 1, 1959, in which there was question about "continuing contract" or "limited contract" of a teacher, in the statement of facts, it is said (emphasis that of this Court).

Relator—was hired by the respondent board—in September 1952, for the ensuing school year. He was granted a limited contract under the provisions of Section 3319.11, Revised Code, and was re-employed each succeeding year up to and including the school year 1957, 1958, under similar limited contracts, each for one year. * * *

Subsequent to the receipt of this letter from the superintendent, *the relator signed a limited contract with respondent* for the 57-58 school year.

The words and language used in this Act are ordinary simple English, and used almost every day in large businesses, and frequently by small businesses, and used very often by lawyers, and the General Assembly is presumed to have used these words in their ordinary sense, well known to the public generally. Could there be any misunderstanding about what was meant by the General Assembly when the Act states "shall enter into contracts," "may enter into such contracts," "contract which shall remain in effect," "contract shall be entered into," or "contract may be entered into" (contract), "is terminated or suspended," or when the Courts use the expression, that the board shall "tender" a contract to a teacher.

The expression "to execute a will" or "to execute a deed" are well known to mean something in writing and the signing thereof. To constitute a "contract" there must be an offer made by one person or body to another, and an acceptance of that offer by the person to whom it was made.

An allegation in an action for a breach of a contract, that a certain written contract was "entered into" is sufficient to admit proof that a memorandum thereof was delivered. *Bailey* v. *Leishman,* 89 Pac., 78, 79, 32 Utah, 123, 13 Ann. Cas., 1116.

The expression "entered into" as used in an allegation of a complaint alleging that defendant entered into a bond, has a well defined meaning, and is frequently found in statutes,

opinions of courts and legal publications generally. Ordinarily it is the equivalent to the phrase "to become bound," "recognizance," "contract," etc., and hence such allegation is sufficient as an averment that the bond was executed. *Fire Assn. of Philadelphia* v. *Ruby*, 82 N. W., 629, 630, 60 Neb., 216, also: *Douthit* v. *Mohr*, 18 N. E., 449, 450, 116 Ind., 482.

The word "execute" means to complete, as a legal instrument; to perform what is required to give validity to, as by signing and perhaps sealing and delivering; as to execute a deed, will, etc. *Southern Enterprises* v. *Foster,* La. App., 12 Sou. 2d, 842, 844.

A contract is "executed" by being signed and not by being adopted and the signature is a part of its execution. *Mastin Realty & Mining Co.* v. *Commissioner of Internal Revenue*, C. C. A., 8, 130 Fed. 2d, 1003, 1005.

Though a contract is signed by a party, it is not "executed" until delivered. *American Copying Co.* v. *Muleski,* 122 S. W., 384, 385, 138 Mo. App., 419.

As respects the rule that teacher's contract executed before the beginning of the fiscal year is void if the salary is to be paid out of funds appropriated for the ensuing fiscal year, the word "executed" is used in its ordinary legal meaning including delivery and implying a complete contract. *Smith* v. *School District*, 102 Pac. 2d, 131, 134, 187 Okla., 184.

The Court have used the word "tender" several times, which word is not found in the Act, but which word is well known and really requires no definition:

"tender" in case of mutual and concurrent promise means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concur and agree with things which he is required by it to do, and a notice by the former to the latter of such readiness. *Rohn* v. *Heidrich*, 174 Ill. App., 423.

This Court is familiar with the Opinion No. 6419, of April 4, 1956, 1956 Opinions of Attorney General page 294, where the "syllabus" of the opinion states:

"3. The Contract of employment of a teacher in the public schools is not required to be in writing."

and this is based on the following statement in the published Opinion:

"3. A third question is suggested in your letter, whether a teacher's contract must be in writing. Certainly the statutes make no such requirement. Furthermore, Section 3319.11, Revised Code, manifestly contemplates employment of teachers without any writing by providing that unless the board gives a teacher having a limited contract written notice of its intention not to re-employ him, he shall be 'deemed re-employed at the same salary plus any increment,' " etc.

The facts as given in the inquiry, upon which this opinion was based, show that the board of education in question had at no time complied with the specific requirements of the Teachers' Tenure Act, by giving a *written continuing contract* to the teacher in question, on or shortly after September 1, 1941, or any time thereafter.

This Court does not know by which Assistant Attorney General this opinion was written, but in the opinion of this Court he failed to recognize the plain, unambiguous, and not confusing simple business English in the Act; he failed to read the part of the Revised Code Section, which he quoted, to the end of that paragraph, where the statute says: "a contract * * * shall be executed accordingly." This Assistant Attorney General apparently failed to search for the decisions of the Courts upon the Teachers' Tenure Act, which would have shown him that the Opinion was in error, and therefore, he entirely passed over the case of *State, ex rel. Rutherford,* v. *Barberton Board of Education, supra,* decided July 2, 1947 (almost nine years before this opinion) where the Supreme Court definitely passed upon this Section, then Section 4842-8, General Code. And this Assistant Attorney General also failed to note the Supreme Court case of *Jacot* v. *Secrest et al, Board of Education of City of Warren, supra,* decided May 31, 1950, where the Supreme Court was passing upon this identical section, then Section 4842-8, General Code, in the particular part that this Assistant Attorney General was using as basis for the Attorney General's Opinion, where the Supreme Court said (emphasis not in opinion):

"Such a procedure results in the *obligation* on the part of

the board of education *to enter into a written contract* with the teacher for the ensuing school year.''

Enough has been said to show that the Opinion was not then, following the Act as passed by the General Assembly, or as interpreted by the Courts, and therefore should not be followed by any Board of Education, as to what it should do, in the opinion of this Court.

However, the alleged contract here comes under another part of this Section 3319.11, Revised Code, as the defendant here, the teacher in question, had never taught in the Barberton public schools before, and there is no decision of the Courts upon this particular paragraph of this Section:

A limited contract may be entered into by each board with each teacher who has not been in the employ of the board for at least three years and shall be entered into regardless of length of previous employment with each teacher employed by the board who holds a provisional or temporary certificate.

The defendant here held more than a provisional or temporary certificate, as he held a Life High School and Elementary School Certificate, and therefore the statute was imperative ''A limited contract * * * shall be entered into.'' Under the plainly expressed language of the Act, and under the decisions of the Supreme Court and of the Courts of Appeals, this meant a written contract, signed by both parties, the Board and the teacher.

This purported hiring was done after the effective date of the Teachers' Tenure Act, of September 1, 1941, and therefore the same is governed by that Act, and by no previous laws. The purported employing Board had been in the Supreme Court, on the question of limited contract automatic re-employment in the case of *State, ex rel. Rutherford,* v. *Barberton Board of Education, supra,* decided July 2, 1947, and after that case there should have been no question in the minds of the Board members that there had to be written contracts in all cases in the employment of teachers, who held at least provisional or temporary certificates.

In the opinion of this Court, these contracts should be executed in duplicate, the Board executing the same in duplicate, sending both copies to the teacher to be employed, who accepts the same by signing both, and returning one signed

copy to the Board, so that each party to the contract has a copy signed by both parties. The Court is of the opinion that this signing of duplicate contracts and each party thereto having a copy is necessary under the specific wording of the Teachers' Tenure Act, about the contracts.

For the employment of the defendant by the purported employing Board of Education in the instant case, a written contract would have had to be entered into between the Board of Education and the teacher; this was not done, and under the Teachers' Tenure Act there was no employment of the defendant by the Board of Education of Barberton School District, for the school year 1954-55, which could be done only by the tender of a written contract signed by some authorized person or persons for the Board, and there was no acceptance of any purported employment by the defendant here, as such acceptance could be only in accordance with the provisions of the Act, that is, his acceptance by his signature upon a written contract.

The contract here sued upon states that the amount is due "If said teacher is employed and accepts said position." The Board of Education could not employ the teacher by only a resolution upon its minutes. In addition to that it would take a written contract signed by some authorized person or persons for the Board, and a written contract tendered to the teacher. The minutes of the Board do not show that that was ever done, or was even authorized to be done. And his acceptance could only be by written signature upon the tendered contract, and the same returned to the Board of Education. Under the Teachers' Tenure Act, there could not have been any acceptance by the teacher here in any other way.

The evidence on the part of the defendant showed that there had never been any written contract between the Board of Education and this teacher.

The facts here fall within the plain provisions of the Teachers' Tenure Act, which definitely required a contract to be in writing, as this teacher had at least a provisional or temporary certificate (in fact he had life Certificates), and the evidence on the part of the plaintiff failed to show that the Act was complied with, and that the defendant, the "said

teacher is employed by the Board and accepts said position."

The plaintiff here had the burden of proof and failed to show a written contract of employment and acceptance between the Barberton City Board of Education and the defendant, in compliance with the plain provisions of the Teachers' Tenure Act. Plaintiff, having failed to show such a written contract, failed in his proof. The evidence on the part of the defendant showed that there had not been such a written contract, as is required. Therefore, the memo. opinion of this Court, and the judgment for the defendant was and is correct.

The Motion of Plaintiff for the Court to set Aside Judgment and for a New Trial shall be overruled, with exceptions saved to the Plaintiff, and entry to this effect shall be entered.